JOE DALLAS v. ELIZABETH MARGARET WAGNER, TRADING AND DOING BUSINESS AS GREENSBORO LOAN COMPANY AND CHARLES L. WAGNER AND ELIZABETH WAGNER, INDIVIDUALLY.

(Filed 19 April, 1933.)

**1. Fraud A a—**

The elements of actionable fraud are a false statement, knowledge of its falsity or culpable ignorance on the part of the person making it, intent to deceive, and deception and damage.

**2. Same—Plaintiff held not entitled to recover for fraud under facts of this case, his remedy, if any, being for breach of contract.**

Where in an action for fraud the evidence is to the effect that plaintiff purchased a diamond pin and ring which defendant guaranteed in writing were genuine, and that the written guarantee also contained a stipulation that defendant would loan thereon a certain sum at any time within twelve months, and that defendant refused to loan the amount stipulated within the specified time upon demand, but there is no evidence that the diamonds were not genuine: *Held*, the plaintiff's action for fraud should have been nonsuited, the plaintiff's remedy, if any he has, being for breach of the contract to loan the amount stipulated.

APPEAL by defendants from *Stack, J.,* and a jury, at January Term, 1933, of GUILFORD. Reversed.

The plaintiff purchased of the defendants (1) a man's diamond pin, (2) a man's diamond ring. At the time the following agreement was entered into:

"Greensboro Loan Company.

Greensboro, N. C.

Guarantee No. 533.

113 East Market Street.

*Guarantee.*

This is to certify that we have this day sold to Joe Dallas, Greensboro, N. C.

(Article) Men's Dia. Pin.

And we guarantee the above genuine diamond.

(Special remarks) Will loan $250.00.

Date: 25 December, 1930.

(Amount) $350.00.

Greensboro Loan Company.

Per Chas. L. Wagner.

DALLAS *v.* WAGNER.

Greensboro Loan Company.

Greensboro, N. C.

Guarantee No. 535.

113 East Market Street.

*Guarantee.*

This is to certify that we have this day sold to Joe Dallas, Greensboro, N. C.

(Article) Men's diamond ring.

And we guarantee the above genuine diamond.

(Special remarks) Will loan $250.00.

Greensboro Loan Company.

Date: 26 December, 1930.                    Per Chas. L. Wagner.

Amount $400.00.          (Within one year from above date.)"

The complaint of plaintiff, with the amendment allowed by the court below, was an action for actionable fraud or deceit in the sale of the diamond pin and ring. The defendants denied the allegations of the complaint as to fraud or deceit.

The issues submitted to the jury and their answers thereto, were as follows:

"1. Did the defendants induce the plaintiff to purchase of them the scarf pin and ring in question by false and fraudulent representations, as alleged in the complaint? Answer: Yes.

2. If so, what amount of damages, if any, is the plaintiff entitled to recover of the defendants on account thereof? Answer: $490.00.

3. When the plaintiff pledged the pin and ring to the defendants had the diamond stones been changed and the ones pledged not the ones that the plaintiff had bought of the defendants? Answer: No.

4. If the stones in question were not the same, in what amount, if any, is the plaintiff indebted to the defendants? Answer: ........ .."

The total sale price of the diamond pin and ring was $750.00. Plaintiff, according to the evidence, had borrowed from defendants $110.00 on the diamond pin and $150.00 on the diamond ring—a total of $260.00, and set up a counterclaim for same—($265.00). The judgment of the court below is the difference between the purchase price of the diamond ring and pin and the money loaned on same, viz.: $490.00.

The allegations of the complaint and answer are lengthy, but we think the above sufficient to set forth the controversy. At the close of plaintiff's evidence the defendants moved for judgment as of nonsuit. Motion denied. Exception by the defendants.

The defendants introduced no evidence and again reviewed their motions for judgment as of nonsuit. Motions denied, exception by defendants. The defendants duly assigned error and appealed to the Supreme Court.

The necessary facts will be set forth in the opinion.

*A. Stacey Gifford for plaintiff.*
*Shelley B. Caveness for defendants.*

CLARKSON, J. The question involved: "Did the trial judge commit. error in refusing to grant the defendants' motion for judgment as of nonsuit at the close of plaintiff's evidence?" We think so. ·

The contract as to the (1) man's diamond pin and (2) man's diamond ring, was as follows: "And we guarantee the above genuine diamond—special remarks: Will loan $250.00  .  .  .  within one year from above date."

A guarantee is he to whom a guaranty is made. The contracts were special guaranties to plaintiff. If the diamond pin and ring were not genuine diamonds, the plaintiff had a cause of action on the contract of guaranty. Plaintiff when he elected to purchase the diamond took a guarantee that the diamonds were genuine and also the contract was to the effect that on the diamond pin and ring that he could borrow $250.00 on each—a total of $500.00.

In Pollock on the Law of Torts (1923), 12 ed., p. 283-4, the rule is well stated: "To create a right of action for deceit there must be a statement made by the defendant, or for which he is answerable as principal, and with regard to that statement all the following conditions must occur: (a) It is untrue in fact. (b) The person making the statement, or the person responsible for it, either knows it to be untrue, or is culpably ignorant (that is, recklessly and consciously ignorant) whether it be true or not. (c) It is made to the intent that the plaintiff shall act upon it, or in a manner apparently fitted to induce him to act upon it. (d) The plaintiff does act in reliance on the statement in the manner contemplated or manifestly probable, and thereby suffers damage." *Corley v. Griggs,* 192 N. C., 171, 173.

The plaintiff testified, in part: "So we goes on back in the store, and then he says this is the best one here, Joe, so I says what is the price, he says $350.00, so I says what will you give me on this Mr. Wagner, if I get broke, he says, well, Joe, I will give you $250.00 on it if you go broke. I says, will you give me a contract, he says, yes, *so he wrote the contract, so I bought the pin.* I was in the store about an hour maybe. *He said it was a genuine diamond pin, said he guaranteed it to be a genuine diamond pin.* That was all that was said, *the deal was*

*closed when he signed the contract.* I had another transaction with Mr. Wagner on the next day. I went in and told him I wanted to look at a ring so he showed me one and so he looked at it and taken it out to the light, the stone was about that same size, and he carried me through the same test with it another time. He wanted to know did I know the best stone so I taken the wrong stone the second time. I finally bought the diamond ring and paid $400.00. *He told me that it was one of the best stones that he had in stock that size, that he would lend me $250.00 any time I got ready in twelve months.* He said it was valued $400.00 and I was getting a bargain in it at the price and so I asked him, well, *now suppose I get busted at any time, Mr. Wagner, and need some money. He says well, Joe, I will let you have $250.00 any time on it. Any time within twelve months you come with it and he executed a written contract."*

Plaintiff further testified to the effect that defendants would not lend him on the diamonds as much as was promised under the above mentioned contracts. "I have never secured the balance of the loans." On cross-examination, he said: "I have been up for running a lottery and have been found guilty. I have been up in court for gambling. . . . Mr. Wagner said the price of the ring was $400.00 and I bought it. *He said that he would lend me $250.00 on each one of them and that was all that was said."*

The wife of plaintiff testified, in part: "My husband called me on long distance and told me to get the ring and take it down to Mr. Wagner and get $250.00. Mr. Wagner left word with his wife and when I went down to get the money she only gave me $150.00 and I was to call back the next day and get the remainder."

We find no evidence on the part of plaintiff that the diamonds were not genuine as guaranteed by defendants. In plaintiff's brief he says: "It is true that the plaintiff did not allege or prove any technical defects in the quality of the diamonds purchased by him." The plaintiff did testify: "Mr. Wagner told me at the magistrate's trial that the diamonds has been taken out and some others replaced, and that the stones that were in the ring and pin when I returned them were cloudy and had specks in them, this was the first time I heard this contention."

Plaintiff's witness, Howard Reynolds, on cross-examination, testified: "I have been arrested twice for having whiskey in my possession. Have not worked regularly in five years. I don't know whether the stone was changed before it got in my hands or not. *Mr. Wagner stated before the magistrate that the reason the pin was worth only $110.00 and the ring $150.00 was because the diamonds had been changed.* That the stones were originally blue white and perfect and that they now had defects in them and were cloudy. Mr. Wagner also testified before the magistrate

that the reason he only loaned $110.00 on the pin and $150.00 on the ring at the time was because he wanted a chance to examine them and didn't have a chance right then."

Plaintiff's own testimony is to the effect that he relied on the guarantee and further that he could not borrow $250.00 from defendants on each diamond, in accordance with the contracts.

We do not think there was sufficient evidence of actionable fraud or deceit to have been submitted to the jury. We think the remedy of plaintiff, if any, was an action on his contracts. *Potter v. Miller,* 191 N. C., 814. For the reasons given, the judgment is

Reversed.