EDWARD McKINLEY TERRY, JR. v. CHARLES THURMAN TERRY, INDI-
VIDUALLY AND AS FORMER EXECUTOR OF THE ESTATE OF EDWARD McKINLEY TERRY,
SR.

No. 105

(Filed 27 January 1981)

**1. Fraud § 9— allegations required to state claim**

   In pleading actual fraud the particularity requirement of G.S. 1A-1, Rule
9(b), is met by alleging time, place and content of the fraudulent representation,
identity of the person making the representation and what was obtained as a
result of the fraudulent acts or representation; however, a constructive fraud
claim requires even less particularity, as it is based on a confidential relationship
rather than a specific misrepresentation, and the particularity requirement for
alleging constructive fraud may be met by alleging facts and circumstances
which created the relation of trust and confidence and which led up to and
surrounded the consummation of the transaction in which defendant is alleged to
have taken advantage of his position of trust to the hurt of plaintiff.

**2. Fraud § 9— constructive fraud — sufficiency of complaint to state claim**

   Plaintiff's complaint was sufficient to state a claim for constructive fraud

where plaintiff alleged a close family relationship existed between defendant and his brother, who was plaintiff's father; plaintiff's father had made defendant the executor of his will and for many years there existed a trusted business relationship in that defendant was given managerial responsibilities, including the keeping of the books in his brother's business; immediately prior to the death of plaintiff's father, defendant was relied on increasingly to manage the day-to-day operation of the business; as defendant's managerial control over the business increased, plaintiff's father became seriously weakened by a continued illness; at the time plaintiff's father signed the document which purported to transfer all his interest in his business to defendant, plaintiff's father was confined to his bed, nearly blind, unable to talk or hear clearly and was suffering from intense pain which required heavy medication; at the time the document was executed, a relation of trust and confidence existed between defendant and his brother; defendant knowingly and willfully, and with the intent to deceive, fraudulently induced his brother and business associate, plaintiff's father, to sell his interest in the business at a grossly inadequate price; and plaintiff, as a devisee under the will of his father, had been damaged by the difference between the price agreed to be paid and the actual value of the business.

**3. Fraud § 13— punitive damages — claim incorrectly dismissed**

The trial court erred in dismissing plaintiff's claim for punitive damages since plaintiff's fraud claims constituted a sufficient basis to withstand a motion to dismiss on his punitive damage claim.

Justice MEYER did not participate in the consideration or decision of this case.

APPEAL by plaintiff from decision of the Court of Appeals, 46 N.C. App. 583, 265 S.E. 2d 463 (1980), affirming dismissal of plaintiff's first, third, fourth and sixth claims by *Britt, J.*, entered 16 August 1979 in WAKE Superior Court.

This is an action for compensatory damages, punitive damages, and rescission based on allegations of fraud, misrepresentation, undue influence, and breach of fiduciary duty on the part of defendant. Plaintiff filed his action on 2 February 1979. His complaint included six counts. Following an extension of time to answer, defendant on 30 March 1979 moved to dismiss all counts under Rule 12 (b)(6). After a hearing on the motion, Judge Samuel E. Britt by order dated 16 August 1979 dismissed plaintiff's first, third, fourth and sixth claims and denied defendant's motion to dismiss the fifth claim. Plaintiff voluntarily dismissed his second claim on 17 August 1979.

The Court of Appeals affirmed the dismissal of plaintiff's claims. It dismissed defendant's appeal of the trial judge's denial of defendant's motion to dismiss plaintiff's fifth claim.

On 18 August 1980 we granted plaintiff's petition for discretionary review pursuant to G.S. 7A-31 from that part of the Court of Appeals' decision which affirmed the trial court's dismissal of four of his claims.

*Tharrington, Smith & Hargrove by Steve Evans for plaintiff.*

*Emanuel & Thompson by W. Hugh Thompson and Yeargan & Mitchiner by Joseph H. Mitchiner for defendant.*

BRANCH, Chief Justice.

Plaintiff first assigns as error the dismissal of his first and fourth claims which are grounded on fraud. In pertinent part he alleges in his complaint under these claims:

* * *

3. Plaintiff is the son of the late Edward McKinley Terry, Sr., who died testate in Wake County, North Carolina, on February 25, 1977. Plaintiff is a devisee under his father's Last Will and Testament dated February 5, 1977, which Last Will and Testament has been probated in Wake County.

4. For several years prior to his death, Edward McKinley Terry, Sr. was President and sole stockholder of Terry's Furniture Company, Inc., a retail furniture and appliance dealer in Raleigh, North Carolina.

5. Defendant Charles Thurman Terry, the brother of Edward McKinley Terry, Sr. and uncle of Plaintiff, was an employee of Terry's Furniture Company, Inc. His job was to assist in running the store and to keep the books of the store.

6. Plaintiff is informed and believes and, therefore, alleges upon information and belief that on or about May 31, 1973, Edward McKinley Terry, Sr. transferred by gift 1,087 shares of the stock of Terry's Furniture Company, Inc. to Charles Thurman Terry.

7. Plaintiff, Edward McKinley Terry, Jr., began working at his father's store when he was approximately 14 years of age and continued working there until around April, 1978. He worked closely with his uncle, Charles

Thurman Terry, and relied on his honesty and integrity.

8. On many occasions prior to his death, Edward McKinley Terry, Sr. told plaintiff that he had an ownership interest in the store and that he was "working for himself."

9. In 1976, Edward McKinley Terry, Sr. discovered he had cancer. His health began to decline and surgery to remove cancerous portions of his face was required. In the two months or so prior to his death, Edward McKinley Terry, Sr. was confined to his bed in intense pain; his vision deteriorated to the point of virtual blindness; his hearing and speech ability declined; and his pain was such that his doctor had to prescribe heavy medication.

10. Edward McKinley Terry, Sr. continued to participate in the operation of Terry's Furniture Company, Inc. until at least December, 1976, two months prior to his death; but during the last months of his life because of his illness he relied increasingly on his brother, Charles Thurmond Terry, and plaintiff for the day-to-day operation of the business.

11. On February 4, 1977, 21 days prior to his death, Edward McKinley Terry, Sr. was induced by his brother and business associate, Charles Thurman Terry, to sign a document purporting to transfer all of his interest in Terry's Furniture Company, Inc. to Charles Thurman Terry for $25,000.00. A copy of this document is attached to this Complaint as Exhibit A and incorporated herein by reference.

12. At the time he signed the document attached as Exhibit A, Edward McKinley Terry, Sr. was confined to his bed, nearly blind, unable to talk or hear clearly, suffering intense pain and under heavy medication.

13. Plaintiff witnessed the signing of the purported transfer of his father's interest in the store. Plaintiff was, at that time under severe emotional distress because of his father's physical condition, but was induced to sign the alleged agreement as a witness by Charles Thurman Terry who told Plaintiff that unless he witnessed the

document there would be "a big mess down at the store after his father died." As a result of this stressful situation, his mental and physical condition and the inducement by his uncle, plaintiff witnessed the signing of the alleged agreement without understanding its contents.

14. After his father's death, plaintiff questioned his uncle about the ownership of the store. Around April, 1978, more than one year after Edward McKinley Terry, Sr. died, Charles Thurmond Terry informed plaintiff that he had bought all of Edward McKinley Terry, Sr.'s interest in the store for $25,000.00; that plaintiff had no interest in the store; and that the only thing plaintiff had at the store was a job which he would not have for long.

15. Plaintiff was fired by Charles Thurmond Terry shortly thereafter.

16. Plaintiff has repeatedly requested the opportunity to inspect the books and records of Terry's Furniture Company, Inc. to determine the value of his father's interest in the business. That request has been denied by defendant.

17. Plaintiff is informed and believes and alleges upon information and belief, that the value of his father's interest in Terry's Furniture Company, Inc. on February 4, 1977 was far in excess of the $25,000.00 paid by Charles Thurman Terry.

18. Charles Thurmond Terry knowingly and willfully, and with intent to deceive, fraudulently induced his brother and business associate, Edward McKinley Terry, Sr., to sell his interest in Terry's Furniture Company, Inc., at a grossly inadequate price, and such deceit occurred at a time when Edward McKinley Terry, Sr. was confined to his bed, nearly blind, unable to talk or hear clearly, suffering from intense pain, and under heavy medication.

19. Charles Thurman Terry knowingly and willfully, and with the intent to deceive, misrepresented to plaintiff following the death of plaintiff's father the circumstances surrounding his alleged purchase of plaintiff's

father's interest in Terry's Furniture Company, Inc. and that plaintiff should trust his uncle to protect plaintiff's interest.

20. As a result of Charles Thurman Terry's deceit and influence over Edward McKinley Terry, Sr. and plaintiff, plaintiff, as a devisee under the will of Edward McKinley Terry, Sr., has been damaged by the difference of the price paid by Charles Thurman Terry for Edward McKinley Terry, Sr.'s interest in Terry Furniture Company, Inc. and the true market value of that interest as of February 5, 1977, plus such consequential damages as plaintiff may prove.

As a general rule, the law of frauds contains few absolutes. In this connection, this Court has stated:

Fraud, actual and constructive, is so multiform as to admit of no rules or definitions. "It is, indeed, a part of equity doctrine not to define it," says *Lord Hardwicke*, "lest the craft of men should find a way of committing fraud which might escape such a rule or definition." Equity, therefore, will not permit "annihilation by definition," but it leaves the way open to punish frauds and to redress wrongs perpetrated by means of them in whatever form they may appear. The presence of fraud, when resorted to by an adroit and crafty person, is at times exceedingly difficult to detect. Indeed, the more skillful and cunning the accused, the less plainly defined are the badges which usually denote it. Under such conditions, the inferences legitimately deducible from all the surrounding circumstances furnish, in the absence of direct evidence, and often in the teeth of positive testimony to the contrary, ample ground for concluding that fraud has been resorted to and practiced by one or more of the parties. *Grove v. Spike*, 72 Md., 300.

*Standard Oil Company v. Hunt,* 187 N.C. 157, 159, 121 S.E. 184, 185 (1924); *Furst v. Merritt,* 190 N.C. 397, 404, 130 S.E. 40 (1925).

Fraud can nevertheless be broken into two categories, actual and constructive. Actual fraud is the more common type, arising from arm's length transactions. It requires an allegation of facts to

support the five elements of fraud. These essential elements of actual fraud are:

> (1) False representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party.

*Ragsdale v. Kennedy*, 286 N.C. 130, 209 S.E. 2d 494 (1974); *Dallas v. Wagner*, 204 N.C. 517, 168 S.E. 838 (1933). Constructive fraud, on the other hand, is less common and arises in circumstances where a confidential relationship exists. A claim of constructive fraud does not require the same rigorous adherence to elements as actual fraud. In *Patuxent Development Company v. Bearden*, 227 N.C. 124, 41 S.E. 2d 85 (1947), this Court said that charging actual fraud is "more exacting" than charging constructive fraud. *Id.* at 128, 41 S.E. 2d at 87.

The proper elements for a constructive fraud claim are set out in *Rhodes v. Jones*, 232 N.C. 547, 61 S.E. 2d 725 (1950). Justice Barnhill stated in that case:

> Plaintiff bottoms his cause of action on the assertion that [defendant] . . . first won and then abused his trust and confidence. That is, he relies, in part at least, upon the presumption of fraud which arises upon a breach of a confidential or fiduciary relationship . . . .
>
> * * *
>
> In stating his cause of action under this principle of law, it is not sufficient for plaintiff to allege merely that defendant had won his trust and confidence and occupied a position of dominant influence over him. Nor does it suffice for him to allege that the deed in question was obtained by fraud and undue influence . . . . It is necessary for plaintiff to allege facts and circumstances (1) which created the relation of trust and confidence, and (2) [which] led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust to the hurt of plaintiff.

*Id.* at 548-49, 61 S.E. 2d 725.

The courts have been as reluctant to define a confidential relationship as they have been to define fraud itself. As this Court said in *Abbitt v. Gregory*, 201 N.C. 577, 160 S.E. 896 (1931):

> The courts generally have declined to define the term "fiduciary relation" and thereby exclude from this broad term any relation that may exist betwen two or more persons with respect to the rights of persons or the property of either . . . . The relation may exist under a variety of circumstances; it exists in all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence.

*Id.* at 598, 160 S.E. at 906. *In Lee v. Pearce*, 68 N.C. 76 (1872), the Court stated that one type of confidential relationship that would support a constructive fraud claim is where "one is the general agent of another and has entire management, so as to be in effect, as much his guardian as the regularly appointed guardian of an infant." *Id.* at 87.

In this case, plaintiff must rely on constructive fraud rather than actual fraud. The gist of the complaint is not that defendant misrepresented material facts to the detriment of plaintiff's father, but rather that defendant used his confidential relationship with plaintiff's father to take advantage of him by purchasing his interest in the business at a price well below its market value.

Defendant contends that under the rules of civil procedure, this claim of fraud is not stated with sufficient particularity. He cites Rule 9(b) which states, "In all averments of fraud, duress or mistake, the circumstances constituting fraud or mistake shall be stated with particularity . . . ." He also notes that, in *Mangum v. Searles*, 281 N.C. 91, 187 S.E. 2d 697 (1972), this Court concluded that "Rule 9(b) codifies the requirement previously existing in our State practice that the facts relied upon to establish fraud, duress or mistake must be alleged." *Id.* at 96, 187 S.E. 2d at 700.

Recognizing and reaffirming our rule that allegations of fraud must be pleaded with greater particularity, we also are aware that Rule 9(b) must be reconciled with our rule 8 which requires a short and concise statement of claims. *See United Insurance Co. v. B. W. Rudy, Inc.*, 42 F.R.D. 398 (E.D. Pa. 1967); 5 Wright and Miller, Federal Practice and Procedure § 1298, at 406 (1969).

Our legislature's recognition of this need for reconciliation of these statutes is reflected in the adoption of the short and concise form suggested for pleading fraud. G.S. 1A, Rule 84(7). We find no decisions in which this Court has examined the rationale of Rule 9(b) to determine the *extent* of particularity required in pleading fraud. Since our Rule 9(b) is a counterpart of the Federal Rule 9(b), we turn to apposite Federal cases for aid in determining this question. *Sutton v. Duke*, 277 N.C. 94, 176 S.E. 2d 161 (1970).

In *Lincoln National Bank v. Lampe*, 414 F. Supp. 1270 (N.D. Ill. 1976), the court noted that the purpose of Rule 9(b) is to protect a defendant from unjustified injury to his reputation by requiring more particularity than is normally required by notice pleading. The particularity required by the rule generally encompasses the *time, place and contents of the fraudulent representation, the identity of the person making the representation and what was obtained by the fraudulent acts or representations.* The particularity required cannot be satisfied by using conclusory language or asserting fraud through mere quotes from the statute. Other courts have noted that allegations of fraud have been advanced for their nuisance or settlement value. Further it has been recognized that fraud embraces such a wide variety of potential conduct that the defendant needs particularity of allegation in order to meet the charges. *See* 5 Wright and Miller, Federal Practice and Procedure, § 1296 (1969). In Re National Student Marketing Litigation, 413 F. Supp. 1156 (D.D.C. 1976).

[1] Our consideration of the above-stated rules of law leads us to conclude that in pleading actual fraud the particularity requirement is met by alleging time, place and content of the fraudulent representation, identity of the person making the representation and what was obtained as a result of the fraudulent acts or representations. A constructive fraud claim requires even less particularity because it is based on a confidential relationship rather than a specific misrepresentation. The very nature of constructive fraud defies specific and concise allegations and the particularity requirement may be met by alleging facts and circumstances "(1) which created the relation of trust and confidence, and (2) [which] led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust to the hurt of plaintiff." *Rhodes v. Jones, supra* at 548-49, 61 S.E. 2d at 725.

**[2]** In instant case, plaintiff has alleged facts and circumstances tending to show the following: A close family relationship existed between defendant and his brother Edward McKinley Terry, Sr. Edward McKinley Terry, Sr., had made defendant the executor of his will and for many years there existed a trusted business relationship in that defendant was given managerial responsibilities including the keeping of the books in his brother's business. Immediately prior to the death of Edward McKinley Terry, Sr., defendant was relied on "increasingly" to manage the day-to-day operation of the business. As defendant's managerial control over the business increased, brother Edward McKinley Terry, Sr., became seriously weakened by a continued illness. At the time Edward McKinley Terry, Sr. signed the document which purported to transfer all his interest in Terry's Furniture Company, Inc., to defendant, Edward McKinley Terry, Sr., was confined to his bed, nearly blind, unable to talk or hear clearly and was suffering from intense pain which required heavy medication. At the time the document was executed, a relation of trust and confidence existed between defendant and his brother. Charles Thurmond Terry knowingly and willfully, and with the intent to deceive, fraudulently induced his brother and business associate, Edward McKinley Terry, Sr., to sell his interest in Terry's Furniture Company, Inc., at a grossly inadequate price. The plaintiff Edward McKinley Terry, Jr., as a devisee under the will of Edward McKinley Terry, Sr., had been damaged by the difference between the price agreed to be paid and the actual value of Terry's Furniture Company, Inc.

Defendant's reliance on *Mangum v. Searles, supra,* is misplaced. While it is true that in *Mangum* there were a number of allegations in the complaint similar to those made in instant case (especially the allegations of the weakened state of the person taken advantage of and the family relationship), we find *Mangum* distinguishable because no continuing formal business relationship was alleged. The complaint in that case simply alleged advice on many confidential matters. The Court in *Mangum* properly found that the mere family relationship and general allegations of consultations among family members were not particular enough to support the complaint. Here, however, plaintiff's allegations detail an increasing control of the business by defendant coupled with a worsening of plaintiff's father's condition which culminated in the execution of the sale of the business.

We hold that on his first and fourth claims plaintiff has alleged sufficient facts and circumstances to withstand dismissal of his fraud claims for lack of particularity.

Plaintiff's next assignment of error is that the Court of Appeals erred by affirming the dismissal of his third claim. This claim alleges that defendant breached his trust as executor of plaintiff's father's estate and engaged in self-dealing by failing to disapprove his $25,000 purchase of the father's interest in the business. Plaintiff's third claim contains the following allegations, in addition to incorporating those set out above:

2. In his Last Will and Testament dated February 5, 1977, Edward McKinley Terry, Sr., nominated his brother Charles Thurman Terry, to serve as Executor of his Last Will and Testament.

3. On March 4, 1977, Charles Thurman Terry applied for and was granted Letters Testamentary by the Clerk of Superior Court for Wake County.

4. As Executor of the Estate of Edward McKinley Terry, Sr., Charles Thurman Terry incurred a fiduciary responsibility to settle the estate with as little sacrifice of value as was reasonable under the circumstances and to perform all acts incident to the collection, preservation, and liquidation of the estate assets in a reasonable and prudent manner. As part of this general fiduciary duty, Charles Thurman Terry had the specific duty to refuse to complete any contract entered into by Edward McKinley Terry, Sr. which the Executor, in good faith, determined not to be in the best interest of the estate.

5. Charles Thurman Terry, as Executor approved and completed the purported agreement by Edward McKinley Terry, Sr. to sell his interest in Terry's Furniture Company, Inc. to Charles Thurman Terry for $25,000.00.

6. By approving and completing said purported agreement, Charles Thurman Terry engaged in self-dealing, acted in bad faith, and breached his fiduciary duty.

Plaintiff contends that G.S. 28A-13-3(a)(4) requires that defendant as executor consider the impact of adopting the contract to

sell his father's business. The statute empowers the executor

> [t]o complete performance of contracts entered into by
> the decedent that continue as obligations of his estate, or
> to refuse to complete such contracts, as the personal
> representative may determine to be in the best interests
> of the estate . . . .

The Court of Appeals reasoned that since the contract was signed prior to the father's death, the transfer of property must have taken place at that time as well. Thus, the court concluded that the estate had no contract obligation to discharge and no claim arose under the statute.

We find that we need not further consider plaintiff's third claim for relief. When the decedent signed the contract of sale, his interest passed to defendant, subject to payment of the full purchase price. The executor's duty, if any, under the statute, would have been to refuse receipt of payment and to bring an action to set aside the contract of sale on grounds of fraud or undue influence. Plaintiff's third claim for relief is, therefore, based on his first and fourth claims of fraud and his fifth claim of undue influence. This being so, if the jury does not find in plaintiff's favor on either the claim of fraud or of undue influence, his third claim for relief necessarily fails also. Conversely, if the plaintiff succeeds on either the fraud claim or the undue influence claim, this third claim becomes mere surplusage.

[3] Plaintiff's final assignment of error is that the trial court incorrectly dismissed his claim for punitive damages. Ordinarily punitive damages are not recoverable. *Hardy v. Toler*, 288 N.C. 303, 218 S.E. 2d 342 (1975). In the proper case, however, punitive damages are permitted on public policy grounds. *Cotton v. Fisheries Products Co.*, 181 N.C. 151, 106 S.E. 487 (1921). As this court stated in *Newton v. Standard Fire Insurance Company*, 291 N.C. 105, 229 S.E. 2d 297 (1976), "In North Carolina actionable fraud *by its very nature* involves intentional wrongdoing . . . [and] is well within North Carolina's policy underlying its concept of punitive damages." *Id.* at 113, 229 S.E. 2d at 302. [Original emphasis.] We therefore hold that plaintiff's fraud claims constitute a sufficient basis to withstand a 12(b)(6) challenge on the claim for punitive damages.

The decision of the Court of Appeals is reversed. We remand to the Court of Appeals for further remand to the Superior Court of Wake County for further action consistent with this opinion.

Reversed and remanded.

Justice MEYER did not participate in the consideration or decision of this case.