David B. MOORE; and David Moore Agency, Inc., Plaintiffs,

v.

NATIONWIDE MUTUAL INSURANCE; Nationwide Mutual Fire Insurance; Nationwide Life Insurance Company; Nationwide General Insurance Company; Nationwide Property and Casualty Insurance Company; Financial Horizons Life Insurance Company; and Colonial Insurance Company of California, Defendants.

Civil Action No. 1:00CV00086.

United States District Court, M.D. North Carolina.

March 8, 2001.

Amiel J. Rossabi, Forman Rossabi Black Marth Iddings & Albright, P.A., Greensboro, NC, K.E. Krispen Culbertson, Culbertson & Associates, Greensboro, NC, for plaintiffs.

J. Reed Johnston, Jr., Tuggle Duggins & Meschan, P.A., Greensboro, NC, for defendants.

*MEMORANDUM OPINION*

BULLOCK, District Judge.

Plaintiffs David Moore and the David Moore Agency, Inc. ("the Agency") filed claims against Nationwide Mutual Insurance, Nationwide Mutual Fire Insurance, Nationwide Life Insurance Company, Nationwide General Insurance Company, Nationwide Property and Casualty Insurance Company, Financial Horizons Life Insurance Company, and Colonial Insurance Company of California ("Defendants") in the Superior Court of Guilford County, North Carolina. Plaintiffs alleged intentional misrepresentation, unfair and decep-

tive trade practices, negligent infliction of emotional distress, and tortious interference with contractual relations. Defendants properly removed the action to this court on diversity grounds pursuant to 28 U.S.C. §§ 1441 and 1332. Defendants have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the following reasons, the Defendants' motion will be granted.

## FACTS

The following facts are established in the pleadings, affidavits, deposition testimony, and exhibits offered by the parties. Where there are disputes, each party's position is given.

Plaintiff David Moore began working with Nationwide in 1990. On May 1, 1992, Moore became an independent Nationwide agent. Moore entered into a superseding Corporate Agency Agreement with Nationwide on February 16, 1995. The Agreement could be cancelled at the will of either party.

Christopher Baughan became an associate agent of the Agency on February 17, 1993, and in 1996 he became Secretary of the Agency. Ronald VanBree became an associate agent on April 1, 1994. Both Baughan and VanBree became shareholders of the Agency in September 1997, but were free to terminate their relationship with the Agency at any time. Baughan also had a succession plan with Nationwide. ·A succession plan gives an associate an opportunity to take over· an agency if the agent should leave.

In February 1998, Moore engaged in discussions with the Southeastern Agency Group ("Southeastern") regarding moving his "book of business" (information regarding Agency clients who were Nationwide policyholders and other non-Nationwide policyholders) to Southeastern. Baughan and VanBree were included in a number of these discussions. However, prior to June 15, 1998, Baughan and VanBree advised Moore that they would not follow him to Southeastern because of financial concerns.

Gary Gray, Nationwide's market manager, learned through another manager, Corie McRae, who had talked to Baughan, that Moore was planning to move to Southeastern and was copying Nationwide's files in order to solicit Nationwide customers for his new employer. Gray had also received information from the North Carolina Department of Insurance that Moore personally had made a fraudulent automobile policy claim. Gray was also aware that Moore repeatedly engaged in irresponsible business practices, including co-mingling customer premium funds in his personal bank account, writing numerous checks on his business accounts that were returned for insufficient funds, failing to pay employee health insurance premiums, and other unprofessional conduct.

On June 15, 1998, Gray and McRae went to Moore's office and gave him a letter of agency termination. McRae also advised Moore that he had heard Moore was planning to work with another agency and that if Moore attempted to take any Nationwide customers with him to another insurance company Moore would lose all of his Deferred Compensation Incentive Credits ("DCIC") and Extended Earnings as described in the Corporate Agency Agreement. Moore contends that DCIC earnings of $83,959.00 and Extended Earnings of over $270,000.00 have been wrongfully withheld from him.

Prior to the meeting with Moore, McRae had Moore's computer password deactivated, which prevented him from having access to Nationwide's agency office automation database. McRae instructed Baughan to pick up the computer system back-up tapes which had been provided by Nation-

wide to the Moore Agency to back-up information contained in the computer's hard drive. Moore acknowledges that these tapes belong to Nationwide but contends he had personal information on the tapes including information about prospective customers who were not Nationwide policyholders. Moore does not contend that Nationwide knew this information was on the tapes or that he ever asked for the tapes back. Defendants claim that the information on the tapes was inaccessible without access to the main Nationwide computers. Moore contends, however, that the information regarding non-Nationwide customers would have been accessible without a password.

Plaintiffs allege that Defendants induced Baughan and VanBree to leave the Agency to work for Nationwide. Following their resignations from the Moore Agency, Baughan and VanBree were employed by Checks and Balances, a temporary employment agency, and assigned to work at Nationwide's Greensboro, North Carolina, district office. In August 1998, Baughan and VanBree became Nationwide agents. Both Baughan and VanBree testified that Nationwide did not induce them to leave the Moore Agency, and that they had already told Moore prior to June 15, 1998, that they were not going with him to Southeastern.

Plaintiffs also allege that Defendants induced the company from whom the Agency leased its offices on a month-to-month basis to terminate the lease. It is undisputed that Plaintiffs' lease was terminated on or about June 22, 1998, and leased to Baughan and VanBree in August or September 1998.

Moore seeks damages from the Defendants for improperly withholding his

DCIC and Extended Earnings and for the reduced income he has suffered as a result of not having access to non-Nationwide customer information which he had stored on Nationwide computer tapes.

## DISCUSSION

Summary judgment must be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The moving party bears the burden of persuasion on the relevant issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party may survive a motion for summary judgment by producing "evidence from which a [fact finder] might return a verdict in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When the motion is supported by affidavits, the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *see also Cray Communications, Inc. v. Novatel Computer Sys., Inc.*, 33 F.3d 390, 393–94 (4th Cir.1994) (moving party on summary judgment motion can simply argue the absence of evidence by which the non-movant can prove his case). In considering the evidence, all reasonable inferences are to be drawn in favor of the non-moving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [fact finder] could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. 2505.

*Intentional Misrepresentation* [1]

■ To establish fraud under North Carolina law, a plaintiff must prove five

---

1. In their brief in opposition to Defendants' motion for summary judgment [Doc. # 38], Plaintiffs insert "Breach of Contract" into the first heading of the argument section of their

brief. Although there is a breach of contract claim in their proposed amended complaint, there is no such cause of action alleged in the

elements: (1) false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, and (5) that results in damage to the injured party. *Rowan County Bd. of Educ. v. United States Gypsum Co.,* 332 N.C. 1, 17, 418 S.E.2d 648, 658 (1992) (quoting *Terry v. Terry,* 302 N.C. 77, 83, 273 S.E.2d 674, 677 (1981) (citations omitted)).

■ Plaintiffs claim that McRae's statement that Moore would lose his rights to all additional compensation if he attempted to solicit Nationwide customers to switch to another insurance carrier was an intentional misrepresentation. Plaintiffs' claim fails as a matter of law. First, it is clear from the plain language of the Corporate Agency Contract that this statement is true. Section 12(f), entitled "Cessation of Agency Security Compensation," states:

> All liability of Nationwide for Agency Security Compensation provided for in paragraph 12, and its subparagraphs shall cease and terminate in the event any one or more of the following shall occur: ... (3) After cancellation of this Agreement, Agency, Agency's Principal, or its employees solicit or attempt to solicit existing policyholders at any time, or directly or indirectly induces, attempts to induce or assists anyone else in inducing or attempting to induce policyholders to lapse, cancel, or replace any insurance contract in force with Nationwide; furnish any other person or organization with the name of any policyholder of Nationwide so as to facilitate the solicitation by others of any policyholder for insurance or for any other purpose.

original complaint. On March 2, 2001, Plaintiffs filed a motion to withdraw their motion for leave to file an amended complaint. Plaintiffs' proposed amendments would be futile in any event, and could be denied for this

(Affs. & Other Exs. in Supp. of Defs.' Mot. for Summ. J. at 9).

McRae's statement cannot provide the basis for a claim of intentional misrepresentation because it was accurate. Therefore, the first element of the claim is not met. Second, the court finds it doubtful that Plaintiffs relied on this statement when Moore had a copy of his own contract that he could have consulted, and he did in fact send out a letter to Nationwide policyholders encouraging them to change insurance carriers. (Affs. & Other Exs. in Supp. of Defs.' Mot. for Summ. J. at 24, 25–26, 104). Evidently, McRae's statement did not deter Moore from the very actions that McRae warned against. Accordingly, the court will dismiss Plaintiffs' claim for intentional misrepresentation.

Plaintiffs' proposed amended complaint sought also to couch Nationwide's failure to pay Moore additional compensation as constituting breach of contract and conversion. However, these causes of action would fail as well because of the plain language of Section 12(f) of the Corporate Agency Contract.

*Negligent Infliction of Emotional Distress*

■ Although Plaintiffs allege negligent infliction of emotional distress in their complaint, they do not address this claim any further. Rule 56(e) of the Rules of Civil Procedure states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing

reason. *See Samuels v. Agency Ins. Co. of Maryland, Inc.,* 215 F.3d 1321 (4th Cir.2000); *Burns v. AAF–McQuay, Inc.,* 166 F.3d 292 (4th Cir.1999).

that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party. Plaintiffs must show that the Defendants negligently engaged in conduct that was reasonably foreseeable to cause Moore severe emotional distress, and that this conduct did in fact cause Moore to suffer severe emotional distress. *Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A.*, 327 N.C. 283, 304, 395 S.E.2d 85, 97, *reh'g denied*, 327 N.C. 644, 399 S.E.2d 133 (1990). Plaintiffs have produced no evidence from which a fact finder might return a verdict in their favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 257, 106 S.Ct. 2505. Because Plaintiffs have rested on the mere allegations in their pleadings and have provided no forecast of any evidence to support the required elements of their claim, the court will dismiss Plaintiffs' claim for negligent infliction of emotional distress.[2]

*Unfair and Deceptive Trade Practices and Tortious Interference with Contractual Relations*

■■■ Plaintiffs contend that Nationwide by asking Baughan to retrieve the computer system back-up tapes committed an unfair trade practice under North Carolina law. To recover, a plaintiff must show that the defendant engaged in conduct that was in or affecting commerce, that the conduct was unfair or had the capacity to deceive, and that he suffered actual injury as a proximate result of the alleged wrongful act. *Gilbane Bldg. Co. v. Federal Reserve Bank of Richmond, Charlotte Branch*, 80 F.3d 895, 902 (4th Cir. 1996); *Spartan Leasing, Inc. v. Pollard*, 101 N.C.App. 450, 460–61, 400 S.E.2d 476, 482 (1991). However, it is undisputed that the tapes belonged to Nationwide and had been provided to the Plaintiffs to back-up the Nationwide computer system hard drive. It is also undisputed that Moore had been terminated by Nationwide when Baughan took the back-up tapes. Further, it is undisputed that the tapes contained Nationwide policyholder information, and there is no evidence that Nationwide knew or should have known that any information personal to the Plaintiffs was on the tapes. Plaintiffs could have compiled information on non-Nationwide policyholders or prospects without entering this information into the Nationwide system. Moore made no demand for return of the tapes. Thus, Moore's alleged loss of earnings because of his inability to reconstruct a list of prospects can in no way be attributed to any unfair trade practice on the part of Defendants.

In their proposed amended complaint, Plaintiffs also characterize Nationwide's retrieval of the tapes as giving rise to causes of action for misappropriation of proprietary business information and tortious interference with business relations. However, because Nationwide was entitled to the tapes and did not know that Plaintiffs had used the tapes to store non-Nationwide information, these proposed claims would also fail.

■■■ Plaintiffs also appear to base an unfair trade practice claim, as well as a tortious interference with contract claim, on the contention that Nationwide interfered with the contractual relationship between the Plaintiffs and Baughan and Van-Bree by inducing them to resign from the David Moore Agency. The only evidence Plaintiffs present to support this contention is Moore's "belief" as stated in his deposition that Baughan and VanBree knew he was going to be terminated by Nationwide prior to his actual termination. However, prior to June 15, 1998, Baughan

**2.** Plaintiffs abandoned this claim in their proposed amended complaint.

and VanBree knew Moore was leaving Nationwide and declined to go with him. Baughan also knew that Moore was violating his contract with Nationwide. Both Baughan and VanBree were free to terminate their relationship with the Plaintiffs at any time.

Under its contract with the Plaintiffs, Nationwide specifically retained the right to continue, after termination of the contract, to service and sell insurance to policyholders making up the Plaintiffs' "book of business." When Baughan and VanBree resigned from the Agency, there were no non-compete provisions of their contracts with the Agency which would prevent them from competing with the Plaintiffs or going to work for Nationwide and continuing to service the Nationwide customers. Baughan also had a succession plan with Nationwide. Therefore, Baughan and VanBree violated no duty to the Plaintiffs when they became independent Nationwide agents in August or September 1998.

Finally, Plaintiffs contend that Nationwide induced the Agency's landlord to terminate the lease of the office space where the Agency conducted its business. Upon learning that Moore was no longer affiliated with Nationwide, the lessor, by letter dated June 22, 1998, gave Moore thirty days' notice that his month-to-month lease was terminated. According to lessor's president, neither McRae, VanBree, Baughan, or any Nationwide representative suggested that the lease be terminated. In the past, Nationwide had been forced to guarantee past-due rental payments to the lessor because Plaintiffs' checks for monthly rental payments had not been honored because of insufficient funds. Plaintiffs rely on the fact that Baughan and VanBree had been concerned several months prior to termination of the Plaintiffs' agency on June 15, 1998, that the lessor could evict the Agency from the location for

failure to pay rent, and had asked McRae to speak to the lessor so that the space could be maintained. However, this evidence is insufficient to raise a factual issue whether Nationwide committed an unfair trade practice by inducing the lessor to terminate Plaintiffs' lease and subsequently lease the space to Baughan and VanBree.

## CONCLUSION

Plaintiffs' motion to withdraw their motion for leave to file an amended complaint will be granted. Nevertheless, the court has given careful consideration to all of Plaintiffs' contentions, however designated, and will grant Defendants' motion for summary judgment.

An order and judgment in accordance with this memorandum opinion shall be entered contemporaneously herewith.

### ORDER and JUDGMENT

For the reasons set forth in the memorandum opinion filed contemporaneously herewith,

IT IS ORDERED that Plaintiffs' motion to withdraw their motion for leave to file an amended complaint [Doc. # 40] is **GRANTED.**

IT IS ORDERED AND ADJUDGED that Defendants' motion for summary judgment [Doc. # 22] is **GRANTED,** and this action is **DISMISSED** with prejudice.