LOYD M. BURGESS, AND KATIE STANLEY NAPLES AS EXECUTRIX OF THE ESTATE OF FRANK F. STANLEY, DECEASED, PLAINTIFFS v. FIRST UNION NATIONAL BANK OF NORTH CAROLINA, DEFENDANT

No. COA01-775

(Filed 7 May 2002)

**Collateral Estoppel and Res Judicata— collateral estoppel— estate administration**

The trial court did not err in an estate administration case by granting judgment on the pleadings in favor of defendant executor bank by determining that plaintiffs' civil action was barred by the doctrine of collateral estoppel as a matter of law, because: (1) defendant has met its burden of showing that the issues underlying the present claims were in fact identical with the issues raised in plaintiffs' previous counterclaims; and (2) all of the evidence in this action that allegedly shows the fraudulent conduct by defendant was before the trial court in the previous action.

Appeal by plaintiffs from judgment entered 1 March 2001 by Judge Catherine C. Eagles in Forsyth County Superior Court. Heard in the Court of Appeals 27 March 2002.

*Tally, Attorney, P.C., by Robert Tally, for plaintiff appellants.*

*Kilpatrick Stockton L.L.P., by Mark Stafford and John B. Morris, for defendant appellee.*

BURGESS v. FIRST UNION NAT'L BANK OF N.C.

[150 N.C. App. 67 (2002)]

McCULLOUGH, Judge.

Plaintiffs Loyd M. Burgess and Katie S. Naples, as executrix for the Estate of Frank Stanley, appeal from an order granting judgment on the pleadings in favor of defendant First Union National Bank of North Carolina entered by Judge Catherine Eagles at the 26 February 2001 Session of Forsyth County Superior Court.

This litigation stems from a family business and how it was to pass on after the death of the founder's wife. Roy Burgess founded Salem Spring, Inc., in the 1940's. Salem Spring, Inc., was in the business of automobile and truck repair. Later, Roy's brother, Loyd Burgess, and Frank Stanley, joined the business. These two became long-time employees of the business. Salem Spring, Inc., branched out by forming Mid-South Automotive Parts, Inc., which operated as an auto parts distributor.

When Roy Burgess died, his wife, Nannie Coe Burgess became the majority shareholder. Loyd Burgess and Frank Stanley were the only minority shareholders. In 1989, Phillip Smith purchased the operating assets of both Salem Spring, Inc., and Mid-South Automotive Parts, Inc., and leased the land on which the store was located, awaiting an environmental clean-up before it was also to be purchased. In this transaction, the shares of Loyd and Frank were purchased by the company, leaving Nannie the sole shareholder.

Nannie Coe Burgess died on 5 March 1990. Defendant First Union was appointed executor of her estate. Her will, executed on 13 April 1976, left a conditional bequest to Loyd and Frank. Essentially, as long as the two survived her, they were each to receive five shares of Salem Spring. An additional condition attached to the bequest was that:

> These bequests to Lloyd [sic] M. Burgess and Frank Stanley are conditioned upon their (or either of them who shall survive me in the event one of them shall predecease me) purchasing from my estate at fair market value all the remaining shares of my stock in Salem Springs, Inc. and Mid-South Automotive Parts, Inc. owned by me at the time of my death.

The bequest continued, saying that:

> The terms of payment for such stock shall be made in such manner and amounts as my Executor shall deem requisite or desirable in the businesslike administration of my estate. It is

my desire that my Executor be liberal in setting the terms of payment . . . .

The residuary of the estate was to pass to Nannie's daughters, Nancy Coe Burgess Maddrey and Brenda Kay Burgess Baker.

A meeting took place on 15 June 1990 between defendant First Union, a lawyer for defendant First Union, Nancy's husband Erwin Maddrey, Loyd and Frank. At this meeting, Loyd and Frank were informed of Nannie's conditional bequest. Defendant First Union presented a valuation of the shares that Loyd and Frank would have to purchase to fulfill the bequest. Loyd and Frank stated that they had no wish to purchase the stock and signed agreements that purported to be renunciations of the bequest.

A few years later, in 1993, Loyd and Frank both filed rescissions with the Forsyth County Superior Court, purporting to rescind the renunciations by each of them back in 1990 alleging that they were "void for want of consideration and for other reasons."

In 1997, Frank Stanley died. In 1998, the land on which Salem Spring was located was sold. This allowed for Nannie's estate to be distributed. However, Loyd and Frank's Estate were still contesting their renunciations and each claimed a stake in the distribution. On 16 November 1998, the Burgess Estate and Loyd and Frank's Estate entered into an agreement that established an escrow fund in case Loyd and Frank's Estate could force their share of the estate to come to them. Defendant was not a party to this agreement. Subsequent to this agreement, on 19 March 1999, the Estate of Nannie Burgess, by and through defendant First Union as executor for the estate, instituted a declaratory judgment action against Loyd and Frank's Estate seeking to determine whether the renunciations were enforceable and not the product of fraudulent misrepresentation. On 24 May 1999, Loyd and Frank's Estate answered and counterclaimed against the Burgess Estate that the renunciations were void on their face as follows:

20. Alternatively, if the [renunciations] should appear *prima facie* to eliminate either [Loyd's or Frank's] beneficial interest in the Estate of Nannie Coe Burgess, then those writings should be declared void for (a) want of consideration, (b) for having been effectively rescinded in 1993, (c) for having been procured by the fraudulent misrepresentation of facts, and / or (d) for having been proferred [sic] to—and the signatures thereon obtained from—

BURGESS v. FIRST UNION NAT'L BANK OF N.C.

[150 N.C. App. 67 (2002)]

[Loyd and Frank] under circumstances of undue influence or duress, as follows:

(a) The so-called "Agreements" were not related to any payments, benefits or other forms of consideration paid or promised to either [Loyd or Frank] at any time.

(b) [First Union] had not acted in reliance upon the integrity and validity of the so-called "Agreements" before the Rescissions . . . were filed, and the latter were effective to undo whatever may have been done by the former.

(c) The so-called "Agreements" describe stock values far higher than those reported and filed by [First Union] with the Clerk of Superior Court, at about the same time. Attached . . . is a page from the 90-day inventory in the Nannie Coe Burgess Estate, showing date-of-death values for 70 shares of Burgess Management Co. (Salem Spring) at $673,428.09 and for 35 shares of Burgess & Associates, Inc. (Mid-South) at $336,714.04. Upon information and belief, the latter corporation had 485 outstanding shares, of which 450 were owned by the former corporation and 35 by Mrs. Burgess directly, at the time of her death. Further upon information and belief, an adjustment of those values accordingly would have resulted in Burgess Management's 70 shares being reported to be worth $985,843.16 and Burgess & Associates' 35 shares being valued at $24,298.97. The offer of 60 shares of the former and all 35 shares of the latter for a total price of $869,307.35, with the financing prescribed in Mrs. Burgess's Will, would have been defensible. The so-called "Agreements'" price of $1,150,616.67 (even with the deceptively-worded future-cost adjustment), with no mention of financing, is not. Upon belief the representation by the authors of those writings, suspected to be persons acting on behalf of the residuary beneficiaries, of that figure as a fair market value was a material misrepresentation of fact, intentionally made, fraudulently misleading and inducing [Loyd and Frank] to sign. Further upon belief, the absence of seller financing, the non-disclosure of cash assets of the companies, and failure to provide for the application of regular rental income (then is [sic] excess of $5,000.00 per month) to any payment plan were material omissions, which fraudulently mislead [sic] and induced [Loyd and Frank] to sign the documents.

(d) The so-called "Agreements" were, upon information and belief, prepared by or for the benefit of residuary beneficiaries of

the Will, neices [sic] of [Loyd], and were profered [sic] to him and [Frank], who was a close friend of the Burgess family, under pressure to sign the writings when presented and not to seek separate counsel concerning the potential import of the writings (despite the recitation to the contrary). No one from [First Union] ever spoke or corresponded with either [Loyd or Frank] about the writings or matters related thereto. Instead, they were forced to deal with Mr. Erwin Maddrey, husband of one of the residuary beneficiaries and an experienced business owner, in matters involving the Estate. [Loyd and Frank] were career automotive mechanics, known by [First Union], the residuary beneficiaries, Mr. Maddrey and their counsel to be unfamiliar with complicated legal and financial matters, subordinate to Mrs. Nannie Burgess's immediate family in the business organizations involved, and reliant upon them for fair treatment. Further, from August 1989 until December 1998, [First Union] and the residuary beneficiaries controlled, directly and indirectly, assets in which [Loyd and Frank] had beneficial interests, which [Loyd and Frank] believed to be in risk of loss, and the signatures on the so-called "Agreements" on June 15, 1990 were thus obtained as a result of duress or undue influence.

. . . .

21. The foregoing Defenses are incorporated herein by reference. [First Union] as a fiduciary has owed to [Loyd and Frank] a duty to ". . . use the authority and powers conferred . . . by [Chapter 28A of the N.C. General Statutes], by the terms of the will under which [it] is acting, . . . and by the rules generally applicable to fiduciaries, for the best interests of all persons interested in the estate, and with due regard for their respective rights." (N.C.G.S. Sec. 28A-13-2) In obtaining or permitting others to obtain the so-called "Agreements," [First Union] has failed in that duty. [First Union] should thus be estopped to deny that [Loyd and Frank] have valid beneficial interests under Mrs. Nanny Burgess's will.

By August of 1999, discovery in the above matter revealed correspondence between defendant First Union and the residuary beneficiaries and certain interoffice memoranda that occurred in the months before the June 1990 meeting. The correspondence and memoranda discussed obtaining renunciations from Loyd and Frank. Apparently none of this correspondence was ever sent to Loyd and

Frank. These letters and memoranda were admitted and entered into evidence in the declaratory judgment matter.

Both parties filed motions for summary judgment. The hearing was held before the Honorable Judge William Z. Wood, Jr., on 8 June 2000. In his order entered 13 June 2000, Judge Wood described Loyd and Frank's Estate's counterclaims as seeking an adjudication "that the Agreements were effectively rescinded because they were obtained without consideration, through fraud and misrepresentation, through breach of fiduciary duty, and through the use of undue influence and duress." Judge Wood's order read in pertinent part:

> Having reviewed all of the materials presented, and having considered all of the arguments and contentions of the parties . . .:
>
> 1. There is no genuine issue of material fact and the claim and counterclaims are to be resolved as issues of law;
>
> 2. The Agreements executed by [Loyd and Frank] on June 15, 1990, were effective renunciations under GS31B-1 and GS31B-2 of the conditional bequests to [Loyd and Frank] in Item IV of the Will of Nannie Coe Burgess, and are valid, enforceable and binding;
>
> 3. The evidence presented by defendants failed to establish a right to rescind the renunciation agreement, in that defendants failed to offer evidence which would support a finding of lack of consideration, fraud, misrepresentation, breach of fiduciary duty, undue influence or duress.

With that, the trial court granted First Union's motion and denied the motion of Loyd and Frank's Estate.

Loyd and Frank's Estate appealed Judge Wood's denial of their motion for summary judgment and the granting of defendant Executor First Union's motion for the same. This Court, in an opinion filed 18 December 2001 upheld the trial court in *First Union Nat. Bank v. Burgess*, No. COA00-1404, (N.C. App. Dec. 18, 2001). That Court said of the counterclaim that it was "alleging *inter alia* that the Agreements were not effective as renunciations, or were void because obtained by fraudulent misrepresentation of facts . . . in the form of a material misrepresentation of facts by First Union." *First Union*, slip op. at 7, 9. Further,

> [s]pecifically, Defendants contend that First Union, as executor of the Estate, failed to fully disclose the terms of the will,

presented [Loyd and Frank] with a value for the stock that First Union knew was too high, and failed to inform [Loyd and Frank] that the company had substantial cash assets. Defendants further allege that First Union, as executor under the will, had a fiduciary duty to [Loyd and Frank], which it breached, thereby engaging in constructive fraud.

*Id.*, slip op. at 10.

This Court held that Loyd and Frank's Estate "have proffered no evidence that First Union sought to benefit itself from its alleged fraud[,]" this being an essential element of both active and constructive fraud. *Id.*, slip op. at 12; *see Terry v. Terry*, 302 N.C. 77, 273 S.E.2d 674 (1981); *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 488 S.E.2d 215 (1997). Loyd and Frank's Estate abandoned the undue influence and duress argument and the rescission argument. Thus, the Court held that "First Union is entitled to judgment as a matter of law." *First Union*, slip op. at 3.

This did not end the litigation, because Loyd and Frank's Estate had filed a complaint on 2 June 2000 against First Union individually, not as executor, just a week before the summary judgment hearing in the original action. Also, it was at least 9 months after discovery had produced the letters, correspondence and interoffice memos regarding First Union and the residuary beneficiaries. Apparently, the complaint was based upon these items of evidence only:

> 7. In the course of [the previous litigation], writings and facts unknown to [Loyd and Frank's Estate] before August 1999 have been discovered, through the production of documents . . . . Although discovered only within the last 10 months, those relate to actions and omissions to perform duties almost 10 years prior to the filing of this Complaint. The claims arising out of those actions and omissions, as set forth below, are directed against First Union, separate and apart from the Burgess Estate escrow fund.

The complaint's main claim was for "Compensatory Damages for Fraudulent Acts by a Fiduciary." This complaint alleges, among other things, that First Union was a fiduciary who owed Loyd and Frank a duty to act for the best interests of all persons interested in the estate; that First Union was aware that the business valuation would be very important as to the administration of the estate of Nannie; that First Union was aware of an "actual or potential conflict of interests"

between Loyd and Frank and the residuary beneficiaries, in that the businesses would pass to the residuary if they were to renunciate; that First Union corresponded with the residuary beneficiaries about the valuation and pursuing the renunciations; that correspondence to that effect was kept secret from Loyd and Frank; that First Union represented a valuation to Loyd and Frank that was higher than more recent valuations known to First Union; and thus First Union has injured Loyd's and Frank's rights and placed in jeopardy their participation as beneficiaries in the estate.

First Union answered and made its motion for judgment on the pleadings on 17 July 2000. The crux of First Union's motion was that "the substance of [Loyd and Frank's Estate's] allegations and claims in this action was presented in [the previous action], and [it] raises no issue not addressed in the prior action." First Union alleged that the claims of Loyd and Frank's Estate as to the misrepresentation theory are

> totally belied by Plaintiff Loyd Burgess' own deposition testimony given in the Prior Action. Mr. Burgess testified repeatedly and emphatically that he and Mr. Stanley chose not to exercise their rights under the Will of Nannie Coe Burgess not because of any information provided or withheld by First Union or its agents, but rather because both men felt that they should have been given an outright gift.

First Union alleged that Judge Wood had all the evidence before him when he ruled in the previous action, including all the correspondence between First Union and the residuary beneficiaries, and ruled that it failed to support Loyd and Frank's Estate's claims. Thus, First Union was entitled to a judgment on the pleadings because those claims were barred by the doctrines of *res judicata* and collateral estoppel.

The hearing was held before the Honorable Judge Catherine C. Eagles on 26 February 2001. In her order entered 1 March 2001, Judge Eagles allowed First Union's motion for judgment on the pleadings because the action was barred by the doctrines of *res judicata* and collateral estoppel. It is from this order that plaintiffs Loyd Burgess and the Estate of Frank Stanley appeal.

The plaintiffs' sole assignment of error is that the trial court committed reversible error by granting defendant's motion for judg-

ment on the pleadings by determining that their civil action was barred by the doctrines of *res judicata* and collateral estoppel.

## I.

We must then address the question of the applicability of the doctrine of collateral estoppel (issue preclusion). Like *res judicata*, collateral estoppel is " ' "designed to prevent repetitious lawsuits over matters which have once been decided and which have remained substantially static, factually and legally." ' " *McCallum v. N.C. Coop. Extension Serv.*, 142 N.C. App. 48, 51, 542 S.E.2d 227, 231, *disc. review denied*, 353 N.C. 452, 548 S.E.2d 527 (2001) (quoting *King v. Grindstaff*, 284 N.C. 348, 356, 200 S.E.2d 799, 805 (1973) (quoting *Commissioner v. Sunnen*, 333 U.S. 591, 599, 92 L. Ed. 898, 907 (1948))).

> In North Carolina a defendant is permitted to "assert collateral estoppel as a defense against a party who has previously had a full and fair opportunity to litigate a matter [in a previous action which resulted in a final judgment on the merits] and now seeks to reopen the identical issues [actually litigated in the prior action] with a new adversary." It is not necessary for the defendant in the present action to have been a party to the previous action. In the event the defense is successfully asserted, the previous judgment constitutes an absolute bar to the subsequent action. . . . *In determining what issues were actually litigated or determined by the earlier judgment, the court in the second proceeding is "free to go beyond the judgment roll, and may examine the pleadings and the evidence [if any] in the prior action."* . . . The burden is on the party asserting issue preclusion to show "with clarity and certainty what was determined by the prior judgment." . . . The party opposing issue preclusion has the burden "to show that there was no full and fair opportunity" to litigate the issues in the first case.

*Miller Building Corp. v. NBBJ North Carolina, Inc.*, 129 N.C. App. 97, 100, 497 S.E.2d 433, 435 (1998) (emphasis added).

> The requirements for the identity of issues to which collateral estoppel may be applied have been established by this Court as follows: (1) the issues must be the same as those involved in the prior action, (2) the issues must have been raised and actually litigated in the prior action, (3) the issues must have been material and relevant to the disposition of the prior action, and (4) the

determination of the issues in the prior action must have been necessary and essential to the resulting judgment.

*State v. Summers*, 351 N.C. 620, 623, 528 S.E.2d 17, 20 (2000).

The issue in the previous case, which was between the Burgess Estate, by and through defendant as executor, and plaintiffs was whether the renunciations were void because they were obtained by fraudulent misrepresentation of facts by defendant. In that case, the present plaintiffs sought the monetary value of five shares apiece. In the present case, plaintiffs are suing defendant directly, not as the executor of the Estate of Nannie Coe Burgess, and asking for compensatory damages from defendant. Their claim is that defendant, as a fiduciary, fraudulently induced plaintiffs to renounce their interests as beneficiaries under the will to the benefit of the residuary beneficiaries. This is the same fraud theory that failed in the previous case. Defendant has thus met its "burden of showing that the issues underlying the present claims were in fact identical with the issues raised in the plaintiff's previous [counterclaims]." *Miller*, 129 N.C. App. at 100, 497 S.E.2d at 435.

Plaintiffs' argument that they did not have a full and fair opportunity to litigate that issue is unpersuasive. Plaintiffs had the evidence of the letters and memoranda several months before any hearing on the case. Indeed this suit was filed, allegedly based on that correspondence, before the summary judgment hearing in the previous case.

Equally unpersuasive is plaintiffs' argument that the present case of fraud is somehow different because the previous action was based on the misrepresentation at the 1990 meeting while the present suit is based on the correspondence in the months prior to that meeting. Again, all the evidence in this action that allegedly shows the fraudulent conduct by First Union was before the trial court in the previous action.

Because the plaintiffs' action is barred by the doctrine of collateral estoppel as a matter of law, the trial court is

Affirmed.

Judges WYNN and BIGGS concur.