Zoutewelle v. Mathis, 2018 NCBC 94.

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
17 CVS 20422

| | |
|---|---|
| SARA JAMES ZOUTEWELLE f/k/a SARA JAMES MATHIS, individually and derivatively on behalf of 5620 FAIRVIEW, LLC and 5628 FAIRVIEW, LLC; SOUTHSTAR HOLDINGS-BURLINGTON I, LLC; SOUTHSTAR HOLDINGS-DURHAM, GASTONIA, LLC; SOUTHSTAR HOLDINGS-FRANKLIN, LLC; SOUTHSTAR HOLDINGS-REYNOLDA, LLC; SOUTHSTAR HOLDINGS-ROCK HILL, LLC; SOUTHSTAR HOLDINGS-DILWORTH I, LLC; SOUTHSTAR HOLDINGS-NORTH CHARLOTTE, LLC; SOUTHSTAR HOLDINGS-BURLINGTON II, LLC; CARTERET COMMONS, LLC; SOUTHSTAR HOLDINGS, LLC; SOUTHSTAR HOLDINGS-SMITHFIELD III A, LLC; SOUTHSTAR HOLDINGS-UNCC, LLC; ELKIN WG REALTY, LLC; GAPWAY ROAD REALTY, LLC; GROT, LLC; NEW BERN AVENUE REALTY, LLC; and NEXT REALTY INVESTMENTS, LLC,<br><br>            Plaintiffs,<br><br>   v.<br><br>JEFFREY DON MATHIS; NEXT REALTY MANAGEMENT, INC.; and MSA PROPERTY HOLDINGS, LLC,<br><br>            Defendants. | **ORDER AND OPINION ON DEFENDANTS' MOTIONS TO DISMISS PURSUANT TO RULE 12(b)(1) AND RULE 12(b)(6)** |

THIS MATTER comes before the Court on Defendants' Jeffrey Don Mathis; Next Realty Management, Inc. and MSA Property Holdings, LLC's ("Defendants") Motions to Dismiss Pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rules"). ("Motion"; ECF No. 37.)

THE COURT, having considered the Motion, the briefs in support of and in opposition to the Motion, the exhibits attached to the First Amended Verified Complaint, the arguments of counsel at the hearing, and other appropriate matters of record, concludes that the Motion should be GRANTED, in part, and DENIED, in part, for the reasons set forth below.

> *Fred B. Monroe of James, McElroy & Diehl, P.A. for Plaintiffs Sara James Zoutewelle f/k/a Sara James Mathis, individually and derivatively on behalf of 5620 Fairview, LLC and 5628 Fairview, LLC, Southstar Holdings-Burlington I, LLC, Southstar Holdings-Durham, Gastonia, LLC, Southstar Holdings-Franklin, LLC; Southstar Holdings-Reynolda, LLC, Southstar Holdings-Rock Hill, LLC, Southstar HoldingsDilworth I, LLC, Southstar Holdings-North Charlotte, LLC, Southstar Holdings-Burlington II, LLC, Carteret Commons, LLC, Southstar Holdings, LLC, Southstar Holdings-Smithfield III A, LLC, Southstar Holdings-UNCC, LLC, Elkin WG Realty, LLC, Gapway Road Realty, LLC, Grot, LLC, New Bern Avenue Realty, LLC, and Next Realty Investments, LLC.*
>
> *R. Jeremy Sugg and Tricia M. Derr of Lincoln Derr PLLC for Defendants Jeffrey Don Mathis, Next Realty Management, Inc., and MSA Property Holdings, LLC.*

McGuire, Judge.

## FACTS AND PROCEDURAL HISTORY

### A.     *The parties*

1.     Plaintiff Sara James Zoutewelle ("Zoutewelle") and Defendant Jeffrey Don Mathis ("Mathis") were married on May 22, 1982.  They separated on July 12, 2006 and divorced on July 15, 2009.  (First Am. Ver. Compl., ECF No. 29 at ¶ 34.)

2.     Plaintiffs 5620 Fairview, LLC, 5628 Fairview, LLC, Southstar Holdings-Burlington I, LLC, Southstar Holdings-Durham, Gastonia, LLC, Southstar Holdings-Franklin, LLC, Southstar Holdings-Reynolda, LLC; Southstar Holdings-Rock Hill,

LLC; Southstar HoldingsDilworth I, LLC; Southstar Holdings-North Charlotte, LLC; Southstar Holdings-Burlington II, LLC; Carteret Commons, LLC; Southstar Holdings, LLC; Southstar Holdings-Smithfield III A, LLC; Southstar Holdings-UNCC, LLC; Elkin WG Realty, LLC; Gapway Road Realty, LLC; Grot, LLC; New Bern Avenue Realty, LLC, and Next Realty Investments, LLC are North Carolina limited liability companies (collectively "the Real Estate Entities"). (*Id*. at ¶¶ 2–21.)

3.　　Defendants NEXT Realty Management, Inc. ("NEXT") and MSA Property Holdings, LLC ("Holdings") are North Carolina companies owned and controlled by Mathis (collectively, Mathis, NEXT, and Holdings are referred to as "Defendants").

4.　　Non-party Crossroads Realty Group, LLC ("Crossroads") is a North Carolina limited liability company owned and controlled by Mathis.

*B.　　The Marital Settlement Agreement*

5.　　Zoutewelle and Mathis entered into a Marital Settlement Agreement ("MSA") on May 6, 2009 in order to resolve their respective property rights and other obligations arising out of their marital relationship. (*Id*. at ¶ 35; ECF No. 29.3–29.4.) The MSA divided the ownership of the Real Estate Entities between Mathis and Zoutewelle, so that both Mathis and Zoutewelle each received a 50% membership interest in the Real Estate Entities.

6.　　Under the MSA, Mathis remained the sole manager of the Real Estate Entities. (*Id*. at ¶ 37–38.) The Real Estate Entities are "special purpose entities" that hold income producing real estate or real estate for development. (*Id*. at ¶ 37.)

The MSA permits Mathis to receive certain fees as manager of the Real Estate Entities as follows:

(i)     A base asset manager fee equal in amount to two percent (2%) of the gross rental income received by the Real Estate Entities; provided, however, the amount of these fees shall not exceed the total sum of $75,000.00 in any calendar year.

(ii)    A sales fee equal in amount to one percent (1%) of the sale price of each real estate asset of the Real Estate Entities; provided, however, such fee shall not exceed the total amount of $50,000.00 per entity.

(iii)   In cases where [Mathis] procures a tenant for one of the Real Estate Entities and no real estate broker is utilized by the parties, Husband shall receive a lease fee equal to four percent (4%) of the gross rental due under the lease, to be paid one-half upon execution of the lease and one-half upon tenant's occupancy.

(*Id.* at ¶ 39.)  Mathis is authorized to hire other entities, including Crossroads, to provide services for the Real Estate Entities.  However, if Mathis hires Crossroads to provide services to a Real Estate Entity, he is not permitted under the MSA to receive the same fees twice for the same work, once as the managing member of the Real Estate Entities and again for work that Crossroads performs.  (*Id.* at ¶ 40.)

7.     The MSA also provides, in relevant part, as follows:

Each party shall be entitled to be fully informed regarding the Real Estate Entities and their assets, and each party shall be entitled to copies of all significant documents regarding the Real Estate Entities and their assets. Husband shall provide Wife with information about all significant activities of each real estate entity and all significant transactions concerning the real estate assets of the entities, such as, for example, acquisition of new tenants, sale of a real estate asset, and profits and losses

from operations. Husband shall also provide Wife with copies of all significant documents concerning the Real Estate Entities and their assets, such as, for example, income tax returns, periodic financial statements, leases for tenants and modifications thereof, and contracts for the sale of real estate assets. In addition, Wife shall be entitled to inspect the books and records of each Real Estate Entity at reasonable times and places, during ordinary business hours, upon her request. (ECF No. 29.3, at § 6.16(h).)

Except for the asset management fees which are to be paid to Husband (as set forth above), Husband and Wife shall receive equal distributions of money from each of the Real Estate Entities, and each party shall receive distributions at the same time as the other party receives distributions. These distributions shall include, but not be limited to, distribution of net rental income and proceeds from the sale of real estate assets. (*Id*. at § 6.16(i).)

On or before the 15th day of each month, Husband shall determine the amount of money available for distribution to each party, after payment of current expenses and establishing reserves for anticipated future expenses and liabilities. Husband shall prepare a report which summarizes his decisions, and shall cause the distributions to be made directly to each party. Husband shall provide Wife with a copy of these monthly reports. The reports shall be substantially similar to the reports which Husband has been providing to Wife for the past several months. If there is any material change in the management structure of the Real Estate Entities, such as, for example, a change in personnel who are responsible for leasing the real estate assets of the Real Estate Entities, then Husband shall promptly notify Wife by means of a note in the monthly reports. (*Id*.)

There is no agreement or guarantee as to the amount which will be available for distribution to the parties each month. There are a number of variables which could adversely or beneficially affect the amount. However, it is the hope of the parties that each of them will receive distributions which range from $25,000.00 - $50,000.00 per month. (*Id*.)

In order to divide the net economic value of the Real Estate Entities, it is the intention of the parties to eventually sell the real estate assets of each of the Real Estate Entities, to equally divide the net proceeds from such sales, and to also divide all other assets of the Real Estate entities, and then to dissolve such entities. (*Id.*, at § 6.16(m).)

8.      Finally, section 1.1 of the MSA provided that "each party hereby stipulates, and acknowledges that he or she … :

> (b)  Has had adequate opportunity to seek disclosure of financial information and documents from the other party;
>
> (c )  Is reasonably informed concerning the financial circumstances of both parties, including the income of the other party, the nature and extent of property owned by the parties, and the debts of the parties;
>
> (d)  Has waived the necessity for additional disclosure of financial information from the other party;
>
> (e)  Has been represented by separate legal counsel in connection with the negotiation, preparation, review, and execution of this Agreement. …"

(*Id.*, at § 1.1.)

9.      The terms of the MSA supersede the terms contained in the Real Estate Entities' operating agreements ("Operating Agreements"). (ECF No. 29, at ¶ 40.)

10.      Finally, in section 6.18 of the MSA Mathis represented that he owned a 20% interest in Carolina Group Partners, LLC ("CGP"), but that CGP did not own any real estate or an own interest in any other entity that owned real estate. (*Id.* at ¶ 118.)

C. *Mathis's alleged misconduct*

11. Zoutewelle alleges that Mathis, in breach of the MSA, the Operating Agreements, and his fiduciary duties: paid himself excessive management, sales, and lease fees (*Id.* at ¶¶ 43, 50, 63, 70–98); engaged in self-dealing, usurped corporate opportunities, and engaged in other improper conduct related to the sales, leasing, and development of properties held by the Real Estate Entities (*Id.* at ¶¶ 55–62, 99–101, 112–14); failed to make equal distributions to Zoutewelle (Id. at ¶¶ 104–06); provided false and misleading financial reports for the Real Estate Entities (*Id.* at ¶¶ 102–03); failed to provide required reports regarding Real Estate Entities (*Id.* at ¶ 45); refused to provide Zoutewelle with access to the books and records of the Real Estate Entities (*Id.* at ¶¶ 44, 124–28); and failed to disclose his interests in other real estate companies and real estate holdings in negotiating the MSA. (*Id.* at ¶¶ 118–23.)

12. On April 9, 2015 Zoutewelle's attorney sent a letter to Mathis alleging breaches of his duties and obligations to Zoutewelle and to the Real Estate Entities ("Demand Letter"). (ECF 29, at ¶130; ECF No. 29.2, at Exh. W.) The Demand Letter specifically claimed that Mathis was paying himself management fees in excess of those permitted by the MSA, and made a demand that Mathis pay Zoutewelle $373,554.43.

13. The Demand Letter also claimed that Mathis had failed to provide adequate monthly financial reporting regarding the Real Estate Entities to Zoutewelle as required by the MSA, and had failed to provide copies of two specific

closing statements related to real estate sales made by the Real Estate Entities. The Demand Letter requested information about a project called "Fairview on Closeburn," and anticipated sales of real estate by 5620 Fairview, LLC and 5628 Fairview, LLC. (ECF 29.2, at Exh. W.) In the Demand Letter, Zoutewelle also requested certain records from the Real Estate Entities.

14. Finally, the Demand Letter stated that it was "a demand pursuant to N.C.G.S. § 57D-8-01" on Mathis and "the Real Estate Entities, to take suitable action to rectify your waste, if any, of the Real Estate Entities' assets, any self-dealing by you, or any other abuse of your position, power, or duties that you owe either the Real Estate Entities, or [Zoutewelle]." (*Id.*)

15. On November 1, 2017 Zoutewelle filed this lawsuit, (ECF No. 3), and the case was designated to the North Carolina Business Court by the Chief Justice of the Supreme Court of North Carolina, and assigned to the undersigned by the Chief Judge of the North Carolina Business Court. (ECF Nos. 1 and 2.)

16. Zoutewelle subsequently filed the First Amended Verified Complaint making individual and derivative claims for breach of contract, or alternatively, unjust enrichment, breach of fiduciary duty, constructive fraud, and conversion; individual claims for fraud, declaratory relief interpreting the MSA, inspection of the Real Estate Entities' records, punitive damages, accounting, and constructive trust.

17. On March 14, 2018, Defendants filed the Motion seeking dismissal of the claims for breach of contract, unjust enrichment, breach of fiduciary duty, constructive fraud, conversion, fraud, and constructive trust. Defendants do not

move to dismiss the claims for declaratory relief, inspection of records, punitive damages, or accounting. Zoutewelle filed a brief in opposition to the Motion, and Defendants filed a reply brief. The Court held a hearing on the Motion, and the Motion is now ripe for determination.

ANALYSIS

A. *Standards of review*

18. Dismissal under Rule 12(b)(1) is proper "[i]f a party does not have standing to bring a claim [because] a court has no subject matter jurisdiction to hear the claim." *Estate of Apple v. Commercial Courier Express, Inc.*, 168 N.C. App. 175, 177, 607 S.E.2d 14, 16 (2005). When considering a motion to dismiss for lack of standing, the Court must "view the allegations as true and the supporting record in the light most favorable to the non-moving party." *Mangum v. Raleigh Bd. of Adjustment*, 362 N.C. 640, 644, 669 S.E.2d 279, 283 (2008).

19. The burden is on the party invoking the Court's subject matter jurisdiction to establish standing. *Marriot v. Chatham Cty.*, 187 N.C. App. 491, 494, 654 S.E.2d 13, 16 (2007). The Court will only grant a Rule 12(b)(1) motion "if the material jurisdictional facts are not in dispute and the moving party is entitled to a judgment as a matter of law." *Wilkie v. Stanley*, 2011 NCBC LEXIS 11, at *10 (N.C. Super. Ct. Apr. 20, 2011) (quoting *Southstar Funding, L.L.C. v. Warren, Perry & Anthony, P.L.L.C.*, 445 F. Supp. 2d 583, 585 (E.D.N.C. 2006)).

20. In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court's inquiry is "whether, as a matter of law, the allegations of the [C]omplaint, treated as

true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Harris v. NCNB Nat'l Bank*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987). Dismissal is proper "(1) when the complaint on its face reveals that no law supports plaintiff's claim; (2) when the complaint reveals on its face the absence of fact sufficient to make a good claim; [or] (3) when some fact disclosed in the complaint necessarily defeats the plaintiff's claim." *Oates v. JAG, Inc.*, 314 N.C. 276, 278, 333 S.E.2d 222, 224 (1985). In deciding a motion to dismiss, the Court must construe the Complaint liberally and accept all well-pleaded allegations as true, *Laster v. Francis*, 199 N.C. App. 572, 577, 681 S.E.2d 858, 862 (2009), but is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Good Hope Hosp., Inc. v. N.C. Dep't of Health & Human Servs.*, 174 N.C. App. 266, 274, 620 S.E.2d 873, 880 (2005) (citation and quotations omitted). In addition, the Court may consider documents that are the subject of Plaintiff's Complaint and to which the Complaint specifically refers. *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 60, 554 S.E.2d 840, 847 (2001).

B.     *Mathis's fiduciary duties*

21.     Underlying several of Zoutewelle's claims in this action are her allegations that Mathis owes fiduciary duties not only to the Real Estate Entities, but also directly to her individually. Zoutewelle alleges that Mathis owes her an individual fiduciary duty because, as manager of the Real Estate Entities, he has complete discretion and authority to make "all financial decisions" regarding those

companies. (ECF No. 29, at ¶¶ 38; 146–49.) Zoutewelle further alleges that "[a]s a result of the relationship between [her] and Defendant, and the terms of the MSA, [she] reposed trust and confidence in Defendant to treat her fairly, abide by the terms of the MSA, and act in a prudent manner in the operation and management of the Real Estate Entities." (*Id*.)

22. A fiduciary relationship may arise when "there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence[.]" *Dalton v. Camp*, 353 N.C. 647, 651–52, 548 S.E.2d 704, 707 (2001) (quoting *Abbitt v. Gregory*, 201 N.C. 577, 598, 160 S.E. 896, 906 (1931)) (internal quotations omitted). Such a relationship "extends to any possible case in which a fiduciary relationship exists in fact, and in which there is confidence reposed in one side, and resulting domination and influence on the other." *Id.* at 652, 548 S.E.2d at 707–08. However, "[o]nly when one party figuratively holds all the cards—all the financial power or technical information, for example—have North Carolina courts found that the special circumstance of a fiduciary relationship has arisen." *Lockerman v. South River Elec. Membership Corp.*, 794 S.E.2d 346, 352, 2016 N.C. App. LEXIS 1234, *11 (2016) (quoting *S.N.R. Mgmt. Corp. v. Danube Partners 141, LLC*, 189 N.C. App. 601, 613, 659 S.E.2d 442, 451 (2008)).

23. Pursuant to the North Carolina Limited Liability Company Act, a manager or officer of a limited liability company "shall discharge that person's duties (i) in good faith, (ii) with the care an ordinary prudent person in a like position would

exercise under similar circumstances, and (iii) subject to the operating agreement, in a manner the manager believes to be in the best interests of the LLC." N.C. Gen. Stat. §§ 57D-3-21(a), 57D-3-23 (hereinafter "G.S."); *see Kaplan v. O.K. Techs., L.L.C.*, 196 N.C. App. 469, 473–74, 675 S.E.2d 133, 137 (2009) (holding that a manager owed a fiduciary duty to the limited liability company). A manager of a limited liability company owes these duties to the company only, and not to the individual members of the LLC. *Id.; see also RCJJ, LLC v. RCWIL Enters., LLC*, 2016 NCBC LEXIS 46, at *22 (N.C. Super. Ct. June 20, 2016) (citing *Kaplan*, 196 N.C. App. at 474, 675 S.E.2d at 137).

24. Defendants argue that as manager of the Real Estate Entities, Mathis owed fiduciary duties to the LLCs, but not to Zoutewelle individually, and that "[Zoutewelle] has alleged the same fiduciary duties owed to her and the [Real Estate] Entities arising out of [Mathis's] management and control of [the Real Estate Entities]." (ECF No. 38, at pp.8, 13–16.) Zoutewelle contends that she sufficiently alleges "that a de facto fiduciary relationship exists between her and [Mathis]. [Mathis] holds all the cards, both with respect to the disclosure of information relating to the management and day-to-day operations of the Real Estate Entities (…), as well as all the financial power." (ECF No. 40, at p. 15.)

25. The Court concludes that Zoutewelle's allegations fail to support the claim that Mathis owed her an individual fiduciary duty based on the authority he possessed as manager of the Real Estate Entities. Rather, Mathis's duties ran to the Real Estate Entities and not Zoutewelle as a member of the companies. Significantly,

Zoutewelle agreed and consented to giving Mathis the substantial authority he possessed as manager in the MSA. (ECF No. 29.3, at § 6.16(d); Exh. 4 at p. 8.) The authority granted Mathis is comparable to the authority provided to managers of other limited liability companies in North Carolina. Under the default rules of the LLC Act "an LLC's managers have virtually complete authority over its affairs[.]" Russell M. Robinson, II, *Robinson on North Carolina Corporation Law* § 34.04[2] (7th ed. 2016); *see also* G.S. § 57D-3-20(b)-(c) (2016). In addition, the MSA gives Zoutewelle broad rights to receive information from Mathis and review the records of the Real Estate Entities. The allegations do not support that Mathis had domination and influence over Zoutewelle, or "held all the cards," with regard to the Real Estate Entities. *See Timbercreek Land & Timber Co., LLC v. Robbins*, 2017 NCBC LEXIS 64, *20–21 (N.C. Super. Ct. July 28, 2017) (plaintiffs allegation that defendant owed her a fiduciary duty arising out of the defendant's "superior knowledge" of and "domination and influence over" the business, and the commensurate confidence reposed by the plaintiff in the defendant, not sufficient to support claim of independent fiduciary duty owed individually to plaintiff). The facts pleaded fail to support Mathis's allegation that Mathis owed Zoutewelle a fiduciary relationship arising from his role as manager of the Real Estate Entities.

26.     Zoutewelle also alleges that Mathis owed her a fiduciary duty because of their "marital relationship." (ECF No. 29, at ¶ 148.) Under North Carolina law, a husband and wife are in confidential relationship during the marital relationship. *Searcy v. Searcy*, 215 N.C. App. 568, 573, 715 S.E.2d 853, 857 (2011). "However, th[e]

[fiduciary] duty ends when the parties separate and become adversaries negotiating over the terms of their separation." *Id.* (quoting *Sidden v. Mailman*, 150 N.C. App. 373, 376, 563 S.E.2d 55, 58 (2002)). The Complaint clearly alleges that Mathis and Zoutewelle separated in 2006, and were represented by separate counsel in the negotiation and execution of the MSA, and divorced in July 2009. Any fiduciary duty Mathis owed Zoutewelle arising from their martial relationship had been extinguished before the period relevant to the claims in this lawsuit.

C. *Zoutewelle's standing to pursue claims belonging to the Real Estate Entities*

27. Zoutewelle alleges derivative claims on behalf of the Real Estate Entities for: breach of contract, or, alternatively, unjust enrichment; conversion; breach of fiduciary duty; and constructive fraud. Defendants move to dismiss these claims pursuant to Rule 12(b)(1) motion for lack of standing. Defendants argue that these claims belong to the Real Estate Entities and that (a) Zoutewelle does not have standing to raise the claims derivatively on behalf of the Real Estate Entities because she did not make a proper pre-suit demand, and (b) Zoutewelle cannot pursue the claims directly because she has not alleged facts that would permit her to bring direct claims under the special duty or separate injury exceptions recognized in *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 658, 488 S.E.2d 215, 219 (1997) (Defs.' Br. Supp. Mots. Dismiss, ECF No. 38, at pp. 6–12.) The Court will address Defendants' arguments in turn.

### 1. Derivative claims

28. Defendants contend that Zoutewelle lacks standing to pursue her claims derivatively because the Demand Letter did not meet the requirements of G.S. § 57D-8-01(a), which provides, in pertinent part, that

> [A] member may bring a derivative action if the following conditions are met:
>  . . .
> (2) The member made written demand on the LLC to take suitable action, and either (i) the LLC notified the member that the member's demand was rejected, (ii) 90 days have expired from the date the demand was made, or (iii) irreparable injury to the LLC would result by waiting for the expiration of the 90-day period.

G.S. § 57D-8-01(a)(2).

29. "By its very nature, a derivative action requires that the [member] bringing such an action have proper standing to bring the action." *Anderson v. Seascape at Holden Plantation, LLC*, 241 N.C. App. 191, 203, 773 S.E.2d 78, 87 (2015) (citation and quotations omitted). "The challenge to the adequacy of any pre-suit demand is, *inter alia*, a challenge to the Court's subject matter jurisdiction over the derivative claims." *Petty v. Morris*, 2014 NCBC LEXIS 67, at *4 (N.C. Super. Ct. Dec. 16, 2014). In order to have standing to bring derivative claims, a plaintiff must have made a proper pre-suit demand. *Miller v. Burlington Chem. Co. LLC*, 2017 NCBC LEXIS 6, at *26 (N.C. Super. Ct. Jan. 27, 2017). The purpose of the demand requirement is to

> allow[ ] the corporation the opportunity to remedy the alleged problem without resort to judicial action, or, if the problem cannot be remedied without judicial action, to allow the corporation, as the true beneficial party, the

opportunity to bring suit first against the alleged wrongdoers.

*Bridges v. Oates*, 167 N.C. App. 459, 467–68, 605 S.E.2d 685, 691 (2004) (citation omitted).

30. The pre-suit demand required by section 57D-8-01(a) "must be made with sufficient clarity and particularity to permit the corporation . . . to assess its rights and obligations and determine what action is in the best interest of the company." *Miller*, 2017 NCBC LEXIS 6, at *29 (quoting *Garlock v. Hilliard*, 2000 NCBC LEXIS 6, at *9 (N.C. Super. Ct. Aug. 22, 2000)).

> [T]he Court must [ ] determine whether the Demand Letter constituted a proper demand to take suitable action so as to satisfy the demand requirement. In so doing, the Court must compare the derivative claims asserted in a complaint against the specific demands a plaintiff has made prior to filing suit.

Id. at *30 (quotation marks omitted). Accordingly, the Court will compare the derivative claims asserted in the lawsuit with the demands contained in the Demand Letter.

31. Zoutewelle's claims for breach of contract and unjust enrichment allege that Mathis breached the MSA and the Operating Agreements by collecting fees in excess of those permitted by the MSA, and by making improper distributions and loans from the Real Estate Entities to himself. Zoutewelle makes a claim for conversion based on the same conduct. In the Demand Letter, Zoutewelle claims that Mathis breached the MSA by "taking management fees in excess of the maximum allowed," and taking management fees when he has engaged a third-party to provide

management services, making specific reference to sections 6.16(e)(i) and 6.16(f) of the MSA. (ECF No. 29.2, at Exh. W.) The Demand Letter also states that Zoutewelle seeks certain records for purposes of investigating "payment of excess management fees to [Mathis]." (*Id.*, at p. 4.) The Demand Letter does not specify from which Real Estate Entities Mathis has collected these fees, but demands payment to Zoutewelle of excess management fees of $373,554.43. (*Id.*) The Demand Letter does not make a specific request for investigation of excessive lease fees or sales fees, or improper distributions.

32. The Court concludes that Zoutewelle made a sufficient pre-suit demand to Mathis regarding her breach of contract, unjust enrichment, and conversion claims for payments of excessive management fees, but not regarding her claims for payments of excessive lease or sale fees, or improper distributions or loans. The Demand Letter refers specifically only to management fees, ties the claim of excessive fees to sections 6.16(e)(i) and 6.16(f) regarding Mathis's rights to fees for management of the Real Estate Entities, and not to the sections entitling Mathis to fees based on the sales of properties or securing leases from tenants. The Demand letter makes no specific claims regarding distributions or loans. The Demand Letter's vague reference to "waste" and "self-dealing" are not sufficiently specific to place Mathis on notice regarding demands other than those related to management fees. Accordingly, Zoutewelle lacks standing to pursue derivative breach of contract, unjust enrichment, and conversion claims on behalf of the Real Estate Entities for alleged excessive lease or sales fees paid to Mathis and for improper distributions or loan

payments to Mathis, but Zoutwelle does have standing to pursue such claims for alleged excessive management fees.

33. The Court next considers the derivative claims on behalf of the Real Estate Entities for breach of fiduciary duty and constructive fraud. Zoutewelle alleges that Mathis breached his fiduciary duties to the Real Estate Entities "by usurping opportunities that rightfully belonged to one or more of the Real Estate Entities for himself, by taking excess (*sic*) fees, by taking excess (*sic*) distributions, by wasting the assets of the Real Estate Entities, by failing to disclose material information concerning transactions in which one, or more, of the Real Estate Entities' assets or revenue streams would be utilized for the improper, and wrongful, benefit of Defendant and not properly for the benefit of [Zoutewelle], by failing to obtain [Zoutewelle]'s consent and authorization prior to eliminating [Zoutewelle]'s right to partition the Shops at Rock Creek, and, upon information and belief, by failing to disclose all of [Mathi's]'s real estate holdings, whether held directly, or indirectly through a business entity in which he had an interest at the time of the execution of the MSA." (ECF No. 29, at ¶ 149.)

34. As previously discussed, the Demand Letter specifically requests investigation of Mathis's alleged payment to himself of excessive and improper management fees, and demands repayment of those fees, but does not adequately make demands for other fees, improper distributions, or loans. Accordingly, Zoutewelle may proceed with her derivative claims that Mathis breached fiduciary duties and committed constructive fraud by paying himself excessive management

fees. Zoutewelle's derivative claims for breach of fiduciary duty and constructive fraud for improper distributions, loans, and other payments must be dismissed. *See Miller*, 2017 NCBC LEXIS 6, at *32–34 (demand letter's failure to mention the specific breaches of fiduciary duty alleged by plaintiff in the complaint fatal to plaintiff's derivative claims).

35. Lastly, the demand letter complains that Mathis is not providing Zoutewelle with the monthly financial reports required by the MSA; raises concerns about Mathis's offer to purchase Zoutewelle's interests in 5620 Fairview, LLC and 5628 Fairview, LLC and requests that Mathis provide additional information about any agreements to sell those properties and about the Fairview on Closeburn project; demands access to certain financial and other records of the Real Estate Entities; and demands that Mathis and the Real Estate Entities "take suitable action to rectify" any waste, self-dealing, "or any other abuse of your position, power, or duties." (ECF No. 29.2, at Exh. W.) These complaints are not sufficient to give Zoutewelle standing to raise the derivative claims for usurping corporate opportunities, wasting assets, failing to disclose information to her, failing to obtain her consent prior to eliminating her right to partition the Shops at Rock Creek, and, Mathis's failure to disclose all of his real estate holdings prior to executing the MSA.

36. First, the Demand Letter contains no mention whatsoever of the failure to obtain Zoutewelle's consent prior to eliminating her right to partition the Shops at Rock Creek, and failing to disclose all of Defendant's real estate holdings at the time of the execution of the MSA. To the extent Zoutewelle seeks to bring derivative claims

for waste of the Real Estate Entities' assets, the failure to obtain her consent prior to eliminating her right to partition the Shops at Rock Creek, and failing to disclose all of Defendant's real estate holdings at the time of the execution of the MSA, she failed to make a demand for suitable action, and the derivative claims for breach of fiduciary duty and constructive fraud must be dismissed.[1]

37. In addition, the Court concludes that Zoutewelle has failed to allege a claim belonging to the Real Estate Entities based on Mathis's failure to provide the monthly financial reporting. Such claim does not allege any injury to the Real Estate Entities and belongs to Zoutewelle individually. Zoutewelle cannot pursue a derivative claim on behalf of the Real Estate Entities for Mathis's failure to provide reports.

38. Finally, the Demand Letter does not make any specific demand or claim regarding allegedly usurped corporate opportunities or wasted corporate assets. The vague request "to take suitable action to rectify your waste, if any" and to otherwise rectify "any other abuse of your position" lacks anything near the "sufficient clarity and particularity to permit the corporation . . . to assess its rights and obligations and determine what action is in the best interest of the company." *Miller*, 2017 NCBC LEXIS 6, at *29.

39. Defendants' motion to dismiss Zoutewelle's derivative claims on behalf of the Real Estate Entities for breach of contract, unjust enrichment, conversion,

---

[1] In addition, Mathis's failure to obtain Zoutewelle's consent regarding the partition rights and the failure to disclose his real estate holdings do not allege conduct that injured the Real Estate Entities, and the Real Estate Entities have no claims for these alleged actions that Zoutewelle could pursue derivatively, and should also be dismissed on that basis.

breach of fiduciary duty, and constructive fraud for taking excessive management fees should be DENIED.

40. Further, Defendants' motion to dismiss Zoutewelle's derivative claims on behalf of the Real Estate Entities for breach of contract, unjust enrichment, conversion, breach of fiduciary duty, and constructive fraud, except as specifically denied, should be GRANTED, and those claims should be DISMISSED WITHOUT PREJUDICE.

### 2. Direct Claims

41. Defendants contend that Zoutewelle lacks standing to bring direct claims for breach of contract or unjust enrichment, conversion, breach of fiduciary duty, and constructive fraud because she has not alleged Mathis owed her a special duty separate from his duties to the Real Estate Entities nor that she suffered injuries separate and distinct from the injuries to the Real Estate Entities. *See Barger*, 346 N.C. at 658, 488 S.E.2d at 219 (1997). Under *Barger*, a shareholder or member may bring a direct claim against a third party for wrongs or injuries to the corporate entity "if the shareholder can show that the wrongdoer owed him a special duty or that the injury suffered by the shareholder is separate and distinct from the injury sustained by the other shareholders or the corporation itself." *Id.* at 659, 488 S.E.2d at 219. In *Barger*, the Supreme Court expressly held that "[t]he special duty may arise from contract or otherwise. To support the right to an individual lawsuit, the duty must be one that the alleged wrongdoer owed directly to the shareholder as an individual." *Id.*; *see also Estate of Brown v. Thompson*, 219 N.C. App. 637, 639, 727

S.E.2d 573, 575 (2012) (Plaintiffs failed to state *Barger* exception, in part, because they did "not allege a duty arising from a particular contract between plaintiffs and defendants.").

42.     In the MSA, Mathis expressly agreed to assign a portion of his interests in the Real Estate Entities to Zoutewelle, and assumed specific additional and special obligations directly to Zoutewelle with regard to management of the Real Estate Entities, that are separate from any duties he owes her as manager of the Real Estate Entities.  In other words, the MSA is a contract that unquestionably creates "special duties" owed directly to Zoutewelle by Mathis.  This clearly is sufficient to permit Zoutewelle to pursue direct claims for breach of contract, unjust enrichment, conversion, breach of fiduciary duty, and constructive fraud.  *See Barger*, 346 N.C. at 659, 488 S.E.2d at 220.  Defendants' motion to dismiss Zoutewelle's direct claims for breach of contract, unjust enrichment, conversion, breach of fiduciary duty, and constructive fraud arising from breaches of the MSA should be DENIED.

   D.     *Defendants' Rule 12(b)(6) motion*

1. **Individual claim for breach of contract**

43.     Defendants move to dismiss Zoutewelle's individual claim for breach of contract.  Zoutewelle claims that Defendants breached the MSA and the operating agreements of the Real Estate Entities by taking fees in excess of those permitted under the MSA, wasting the assets of some of the Real Estate Entities, and diverting certain amounts of the revenue streams of the Real Estate Entities to himself.  (ECF No. 29, at ¶ 33.)  Defendants argue that the claim should be dismissed because

Zoutewelle did not identify "the information upon which she relied" in forming the belief that Defendants took excessive fees and did not allege the type or amount of the outstanding fees or from which Real Estate Entity the fees originated. (ECF No. 37, at p. 13.) Zoutewelle counters that they have adequately pleaded a claim for breach of contract, and the claim should not be dismissed.

44. North Carolina is a notice-pleading state. "Under the notice theory of pleading a statement of claim is adequate if it gives sufficient notice of the claim asserted to enable the adverse party to answer and prepare for trial, to allow for the application of the doctrine of *res judicata*, and to show the type of case brought." *Brewer v. Harris*, 279 N.C. 288, 293, 182 S.E.2d 345, 348 (1971) (citation and quotations omitted). A pleading that alleges breach of contract only needs to meet the notice pleading standard. *Tillery Envtl. LLC v. A&D Holdings, Inc.*, 2018 NCBC LEXIS 13, at \*77–78 (N.C. Super. Ct. Feb. 9, 2018) (citing *Haynie v. Cobb*, 207 N.C. App. 143, 148, 698 S.E.2d 194, 198 (2010)).

45. A claim for breach of contract requires that the plaintiff plead (1) the existence of a valid contract and (2) breach of the terms of that contract. *McLamb v. T.P. Inc.*, 173 N.C. App. 586, 588, 619 S.E.2d 577, 580 (2005). Zoutewelle alleges, and Defendants do not argue otherwise, that the MSA is a valid contract, and that Mathis breached the MSA. Zoutewelle has adequately alleged a claim for breach of contract under notice pleading and does not need to allege further information about the breaches, as Defendants argue. Defendants' motion to dismiss Zoutewelle's individual claim for breach of contract is DENIED.

## 2. Individual claims for breach of fiduciary duty and constructive fraud

46.     Defendants move to dismiss Zoutewelle's individual claims for breach of fiduciary duty and constructive fraud on the grounds that Mathis does not owe Zoutewelle a fiduciary duty.  The Court already has concluded that Mathis the facts do not support the allegation that Mathis owed a fiduciary duty directly to Zoutewelle.  Accordingly, Defendants' motion to dismiss Zoutewelle's individual claims for breach of fiduciary duty and constructive fraud should be GRANTED.

## 3. Individual claim for fraud

47.     Zoutewelle alleges that Mathis engaged in fraud by making intentional misrepresentations to Zoutewelle about "the net rental income and sales proceeds available for distribution [from the Real Estate Entities]" in order to conceal Mathis's alleged payments to himself of excessive fees and improper distributions.  (ECF No. 29, at ¶¶ 155–56.)  Zoutewelle also alleges that Mathis made misrepresentations to her to induce her to enter into the MSA by withholding information about his ownership in real estate businesses other than the Real Estate Entities, and by misrepresenting that CGP did not own any interest in real estate.  (*Id.*, at ¶ 155.)

48.     The essential elements of fraud are: "(1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Terry v. Terry*, 302 N.C. 77, 83, 273 S.E.2d 674, 677 (1981).  Allegations of fraud must be pled "with particularity."  Rule 9(b); *Terry*, 302 N.C. at 85, 273 S.E.2d at 678.  "The particularity required by the rule generally encompasses

the *time, place and contents of the fraudulent representation, the identity of the person making the representation and what was obtained by the fraudulent acts or representations*. The particularity required cannot be satisfied by using conclusory language." *Id.* (emphasis in original). Additionally, the deceived party must have reasonably relied on the allegedly false representations. *Forbis v. Neal*, 361 N.C. 519, 527, 649 S.E.2d 382, 387 (2007).

49. Defendants move to dismiss Zoutewelle's fraud claim based on the alleged misrepresentations about the net rental income, sales proceeds, and excessive fees, on the grounds that Zoutewelle "failed to allege with particularity that she acted in reliance upon any alleged misrepresentations in the financial reports, or how any such reliance resulted in any damages." (ECF No. 38, at p. 18.) Zoutewelle did not address this argument in her brief in opposition to the Motion to Dismiss. Nevertheless, the Court concludes that Zoutewelle sufficiently alleged that the misrepresentations in the reports provided by Mathis allowed him to collect excessive fees and make unequal distributions to himself, and that the misrepresentations prevented Zoutewelle from discovering Mathis's misconduct. Defendants' motion to dismiss Zoutewelle's claim for fraud based on misrepresentation of net rental income, distributions, and excessive fees should be DENIED.

50. Defendants also move to dismiss Zoutewelle's fraud claim based on Mathis's alleged concealment of his ownership in real estate businesses other than the Real Estate Entities, and misrepresentations regarding CGP's ownership of real estate. First, Defendants argue that the MSA does not say that Mathis has disclosed

all of his interests in businesses owning real estate. The MSA states that "[Mathis] owns membership interests in a number of limited liability companies" listed in Exhibit 2 of the MSA, but it does not state that the list in Exhibit 2 is an exhaustive list. (ECF No. 29.3, at § 6.16.) In addition, the MSA expressly provides that Zoutewelle had an opportunity to request any financial information desired, was satisfied with the information she received, and that she waived the need for any more information prior to entering into the agreement. (*Id.*, 1.1(b)–(d)).

52. Second, Defendants argue that Mathis did not have any obligation to fully disclose his real estate owning businesses. Under North Carolina law, absent contractual language obligating the parties to make a full disclosure with respect to all marital property, "[a] full and accurate disclosure is required only with respect to that information requested," and the Court of Appeals has "reject[ed] the . . . argument that every spouse as party to a separation and/or property settlement agreement has an affirmative obligation to make a full and accurate disclosure of his or her assets and debts." *Daughtry v. Daughtry*, 128 N.C. App. 737, 740, 497 S.E.2d 105, 107 (1998). The MSA states that both Mathis and Zoutewelle had adequate opportunity to seek disclosure of financial information and documents from the other party, were reasonably informed about the financial circumstances of the other party, and have waived additional disclosures of financial information from the other party. (ECF No. 29.3, at §§ 1.1(b)–(d).)

52. Finally, Defendants argue that Zoutewelle did not allege that she investigated Mathis's financial situation or was denied the opportunity to investigate,

nor did she allege that she could not have learned the facts through reasonable diligence. North Carolina courts have held that "when the party relying on false or misleading representation could have discovered the truth upon inquiry, the complaint must allege that he was denied the opportunity to investigate or that he could not have learned the true facts by exercise of reasonable diligence." *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 59, 554 S.E.2d 840, 846–47 (2001) (citation and quotations omitted).

53. The Court concludes that Zoutewelle's allegations defeat any claim for fraud based on Mathis's representations or concealments about his interests in real estate companies. First, in the MSA Zoutewelle expressly acknowledged that she had all of the information about Mathis's financial interests that she needed and waived the right to any further information. In addition, the parties were not in a confidential relationship at the time they negotiated the MSA, and Mathis owed no duty to make disclosures to Zoutewelle. Finally, Zoutewelle has not alleged that she was denied the opportunity to make further investigation into Mathis's business interests. Defendants' motion to dismiss Zoutewelle's claim for fraud for Mathis's alleged misrepresentations or concealments of his business interests should be GRANTED.

### 4. Claim for constructive trust

54. Finally, Defendants move to dismiss Zoutewelle's claim for a constructive trust. Zoutewelle alleges that she is entitled to a constructive trust with respect to the "assets of [ ] CGP . . . and other entities, that held or had an ownership

interest in real estate at, or prior to, the execution of the MSA." (ECF No. 29, at ¶ 181.) A constructive trust is an equitable remedy. "Courts of equity will impose a constructive trust to prevent the unjust enrichment of the holder of the legal title to property acquired through a breach of duty, fraud, or other circumstances which make it inequitable for him to retain it against the claim of the beneficiary of the constructive trust." *Cline v. Cline*, 297 N.C. 336, 343–44, 255 S.E.2d 399, 404 (1979). "[A] constructive trust ordinarily arises out of the existence of fraud, actual or presumptive—usually involving the violation of a confidential or fiduciary relation—in view of which equity transfers the beneficial title to some person other than the holder of the legal title." *Leatherman v. Leatherman*, 297 N.C. 618, 621–22, 256 S.E.2d 793, 795–96 (1979), *superseded by statute on other grounds* (quoting *Bowen v. Darden*, 241 N.C. 11, 13–14, 84 S.E.2d 289, 292 (1954)).

55. In this case the Court has concluded that allegations support a Zoutewelle's derivative claims for breach of fiduciary duty and constructive fraud, and Plaintiff's direct claims based on breach of the MSA. Accordingly, dismissal of the claim for the remedy of a constructive trust is premature and Defendants' motion to dismiss Zoutewelle's claim for constructive trust should be DENIED.

THEREFORE, IT IS ORDERED that:

56. Defendants' motion to dismiss Zoutewelle's derivative claims on behalf of the Real Estate Entities for breach of contract, unjust enrichment, conversion, breach of fiduciary duty, and constructive fraud for taking excessive management fees is DENIED.

57. Defendants' motion to dismiss Zoutewelle's derivative claims on behalf of the Real Estate Entities for breach of contract, unjust enrichment, conversion, breach of fiduciary duty, and constructive fraud, except as specifically denied, is GRANTED, and those claims are DISMISSED WITHOUT PREJUDICE.

58. Defendants' motion to dismiss Zoutewelle's direct claims for breach of contract, unjust enrichment, conversion, breach of fiduciary duty, and constructive fraud is DENIED.

59. Defendants' motion to dismiss Zoutewelle's individual claim for breach of contract is DENIED.

60. Defendants' motion to dismiss Zoutewelle's individual claims for breach of fiduciary duty and constructive fraud is GRANTED.

61. Defendants' motion to dismiss Zoutwelle's claim for fraud based on misrepresentation of net rental income, distributions, and excessive fees is DENIED.

62. Defendants' motion to dismiss Zoutewelle's claim for fraud for Mathis's alleged misrepresentations or concealments of his business interests should be GRANTED.

63. Defendants' motion to dismiss Zoutewelle's claim for constructive trust is DENIED.

SO ORDERED, this the 13th day of September, 2018.

 /s/ Gregory P. McGuire
Gregory P. McGuire
Special Superior Court Judge for
Complex Business Case